HENRY THOMAS BALLANTINE, JR., & another *vs.*
TOWN OF FALMOUTH & others.[1]

Barnstable.    May 8, 1973. — June 21, 1973.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Municipal Corporations*, Parking place, Acquisition of property, Lease
of property, Town meeting, By-laws and ordinances, Disposal or
use of property, Contracts. *Words*, "Lease."

A vote by a town meeting authorizing a taking by the selectmen by
eminent domain, for public parking, of land already partly in use
for that purpose, and a taking made pursuant to such vote, were
valid; their validity was not affected by a vote under a separate
article of the warrant at the same town meeting authorizing the
selectmen to enter into a lease for public parking of the portion
of the land already so used with the one so using it. [763–764]
A lease by a town, duly authorized by vote at a town meeting, to a
private operator, for public parking, of land recently acquired by
the town for that purpose by a taking by eminent domain would
be constitutionally permissible and would be within the authority
of the town under G. L. c. 40, § 3, to "make such orders as it
may deem necessary or expedient for the disposal or use of its cor-
porate property" and its authority under § 4 to "make contracts for
the exercise of its corporate powers." [764–767]

BILL IN EQUITY filed in the Superior Court on March
12, 1970.

The suit was heard by *Hudson, J.*

*Andrew F. Lane* for the plaintiffs.

*Laurence S. Fordham* (*Peter W. Coogan* with him) for
Woods Hole, Martha's Vineyard and Nantucket Steam-
ship Authority.

*Francis W. Keating*, Town Counsel, for the Town of
Falmouth & another.

WILKINS, J.    This bill for declaratory relief seeks a
determination of the validity of action taken by the board

---

[1] The defendants include the board of selectmen; the Woods Hole,
Martha's Vineyard and Nantucket Steamship Authority (see St. 1960,
c. 701); and one Joseph Corey, Jr., proprietor of Corey's Ferry Park-
ing Service in Woods Hole. Corey has not participated in the appel-
late aspects of this litigation.

of selectmen of Falmouth pursuant to authorization purportedly granted by votes passed under arts. 1 and 2 of the warrant for a special town meeting held on April 2, 1969. At the heart of the controversy is the plaintiffs' challenge to the validity of the taking by the town of an abandoned railroad right of way which the plaintiffs had recently acquired from the Penn Central Company. The right of way extended from Falmouth Center to Woods Hole, a distance of about three and one-third miles, and comprised approximately twenty-five acres.

Under art. 1 of the warrant for the special town meeting, the town voted unanimously to appropriate funds and to "authorize the Selectmen to purchase or take by eminent domain for conservation, recreation, public parking and public utilities purposes that portion of the railroad right of way between Falmouth center and Woods Hole that has been abandoned for railroad purposes, such taking to be under the control of the Selectmen." Under art. 2 of the warrant the town voted to "authorize the Board of Selectmen to negotiate and enter into a lease with the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority or others, to allow the Authority or others to continue to use that portion of the railroad right of way now used by them for parking."

The judge upheld the action of the town under both articles of the warrant, and a final decree was entered ruling that the votes under arts. 1 and 2, the taking and the lease were valid. The trial judge made voluntary findings of fact. The evidence is reported.

On appeal the Appeals Court sustained the judge's ruling that the land taking was valid but concluded that the town had no authority to lease property which it had just acquired by eminent domain for parking purposes because land so acquired for off street parking facilities had to be "held, used and operated by the town itself."

Mass. App. Ct.    ,    .[a] The plaintiffs, on the one hand, and the town and the Authority, on the other, ap-

---

[a] 294 N. E. 2d 524, 530.

plied for leave for further appellate review, which we
have granted.[2]

The defendant Authority operates a passenger and
freight boat line out of Woods Hole. See St. 1960, c. 701,
esp. § 4, par. (a), as amended by St. 1965, c. 437. The
area where its boats dock is quite congested with vehicu-
lar traffic, particularly in the summer months. This
situation has created a fire hazard. There is a consider-
able demand for parking areas for use by motorists who
leave their cars on the mainland when traveling to
Martha's Vineyard or Nantucket. The demand for park-
ing in the area of Woods Hole is not generated solely by
the existence of the Authority's terminal. The Author-
ity has maintained a parking area near Falmouth Cen-
ter, several miles from its Woods Hole dock. The Au-
thority also owns and maintains a parking area adajcent
to its terminal and abutting the railroad right of way.
Finally, commencing in 1966 the Authority leased a por-
tion of the railroad right of way for parking. This
leased area, operated for the Authority by the defendant
Corey, has been used generally by the public for parking
and not merely by customers of the Authority.

In the latter part of 1968 the Interstate Commerce
Commission authorized the railroad to abandon the right
of way. When the railroad expressed an interest in sell-
ing the right of way, the town, the Authority and the
plaintiffs took separate steps toward its possible acquisi-
tion. The plaintiffs' interest in the property was
prompted largely because they own land adjacent to much
of that part of the right of way which had been used for
parking. Their bid to purchase the right of way was
accepted by the railroad on April 1, 1969. The Author-
ity, which has no power of eminent domain, submitted a

---

[2] The defendants argue that this court should consider only those
issues urged in the respective applications for further review as
grounds for further appellate review. However, when this court
grants further appellate review under G. L. c. 211A, § 11, inserted by
St. 1972, c. 740, § 1, the issues to be considered here are not limited
to those urged as grounds for further appellate review, unless the
order authorizing further appellate review sets forth such a limita-
tion.

bid to acquire the premises, but later withdrew it because of a question of the railroad's title to a portion of the right of way. The town took steps which led to the holding of the special town meeting at which it authorized the action which the plaintiffs challenge. The plaintiffs acquired title to the premises from the railroad on May 23, 1969; the town took the property by eminent domain on July 25, 1969. The judge found that all parties exercised good faith.

Since the acquisition of the premises by the town, the parking lot on the premises has continued to be used by the Authority and operated by the defendant Corey, pursuant to an understanding between the town and the Authority that, until the dispute between the plaintiffs and the town is disposed of, the terms of the old lease between the railroad and the Authority, which allows general parking by the public, would be followed. No written agreement between the town and the Authority has been executed.

Several principles of law seem clear and are not challenged by the parties. The provision of off street parking facilities is a public purpose for which land may be taken by a municipality, even if that land is being devoted to public parking by its private owner. *Tate* v. *Malden*, 334 Mass. 507, 508. Where there is legislative authorization to do so, a municipality may properly take for public parking purposes land already in use for public parking and lease it to private individuals who will, for personal profit, operate the premises for parking without substantial change from present conditions. *Court St. Parking Co.* v. *Boston*, 336 Mass. 224, 230–231. Even without explicit statutory authority, municipalities have the undoubted right to lease real estate, land or buildings, held for public purposes and not presently needed for such purposes. *Davis* v. *Rockport*, 213 Mass. 279, 283. *D. N. Kelley & Son, Inc.* v. *Selectmen of Fairhaven*, 294 Mass. 570, 575, and cases cited.

The plaintiffs accept the fact that, if the town had acted only to acquire the premises for public parking,

they would have no basis to object to the taking. Their challenge to the taking rests on the existence of the vote under art. 2, which they contend shows that the taking was in actuality a taking for the private purposes of the lessee of the parking facilities on the premises. They rely on our decision in *Salisbury Land & Improvement Co.* v. *Commonwealth,* 215 Mass. 371, where we held a taking to be invalid under a statute which purported to authorize the immediate disposition to private individuals of land acquired by eminent domain ostensibly for a public purpose. In the case now before us, the situation is significantly different because the premises will in all events be owned by the town and used for the public purpose for which the premises were acquired.

The public parking purposes for which the premises were acquired can be carried out even if there is no lawful authorization to permit someone other than the town to operate the parking facilities. The need for parking for the public in the vicinity of the Authority's terminal is unquestioned. A taking of premises for municipal parking is not to be invalidated merely because some private benefit may follow from the activities of occupants of the vehicles parked in that public parking area.[3]

We agree with the Appeals Court that the town's action under art. 1 and the resulting taking are not tainted by the town's action under art. 2, even if it is invalid. See *Quinlan* v. *Cambridge,* 320 Mass. 124, 132. The votes under the two articles were passed separately. The authorization to take the premises was not contingent upon the negotiation of a lease with the Authority or anyone else. In fact, under art. 2 the selectmen were merely *authorized* to enter into a lease. It was not then certain that they would be able to do so on terms satisfactory to them.

Because the taking is valid standing alone and is not

---

[3] The judge's finding that all parties acted in good faith forecloses any effective argument that the town was making a taking for the Authority. *Poremba* v. *Springfield,* 354 Mass. 432, 434.

contaminated by the town's action under art. 2 (even if it is invalid), the only remaining question is the validity of the town's action under art. 2. In order to avoid supposed constitutional problems, the Appeals Court interpreted G. L. c. 40, § 14, to require inferentially that when property has been taken by eminent domain, the municipality must itself hold, use and operate the land, as long as the premises are needed for a public purpose. But we have already held that property taken for parking purposes may constitutionally be leased forthwith to private operators for use for public parking. *Court St. Parking Co.* v. *Boston,* 336 Mass. 224, 230–231. See *Opinion of the Justices,* 330 Mass. 713, 724. There is thus no constitutional problem. In our view, it is simply a question whether the town has authority to lease the premises for use by someone else upon conditions satisfactory to the selectmen, provided that the premises will be used for a purpose for which the town took them.[4]

The defendants urge that the vote of the town under art. 2 constitutes a valid "by-law" within the meaning of that word in the Home Rule Amendment (see art. 89 of the Amendments to the Constitution of the Commonwealth) and in the Home Rule Procedures Act (see G. L. c. 43B, § 13, inserted by St. 1966, c. 734, § 1). They argue that the constitutional and statutory requirements that municipal home rule legislative action be by ordinance or by-law are met by the town's vote, contending that the vote is an effective exercise of a power or function which is within the home rule legislative power of a municipality. We need not pass on this argument, because the record does not disclose that the vote, even if we were to treat it as a "by-law," was submitted to the Attorney General for approval as required by G. L. c. 40, § 32.

Because the town has passed no effective home rule by-

---

[4] In proceeding to answer this question, we assume, without deciding, that the plaintiffs as abutters have standing to raise this issue in a bill for declaratory relief. Cf. *Woods* v. *Newton,* 349 Mass. 373, 377–379. The validity of specific terms of the lease is not before us.

law concerning its right to enter into leases, the town must look for support for its action under art. 2 to "those powers which are expressly conferred by statute or necessarily implied from those expressly conferred or from undoubted municipal rights or privileges." *Atherton* v. *Selectmen of Bourne,* 337 Mass. 250, 255–256. In order to resolve this issue we need not decide whether, by town meeting vote, a town has the general power to authorize the lease of its land to a private individual as an "undoubted municipal right." See *Murphy* v. *Commonwealth,* 187 Mass. 361, 375. We believe that the power of a town to authorize its selectmen to enter into an arrangement by which others may operate premises acquired for municipal parking purposes is "conferred by statute or necessarily implied" from the statutory powers expressly granted to towns.

Under G. L. c. 40, § 3, "[a] town . . . may make such orders as it may deem necessary or expedient for the disposal or use of its corporate property." Section 4 of G. L. c. 40 permits a town to "make contracts for the exercise of its corporate powers." The town has voted to permit the selectmen to enter into an arrangement with someone else to operate the public parking facility on such terms as the selectmen should determine. Such an arrangement was pursuant to an "order" of the town "for the disposal or use of its corporate property" (G. L. c. 40, § 3) and would be a contract for "the exercise of its corporate powers" (G. L. c. 40, § 4) to provide public parking facilities on the premises.

The Appeals Court did not consider these statutory provisions to be applicable because the authorization under art. 2 was to *lease* the premises. See fn. 10 of the Appeals Court opinion, *Ballantine* v. *Falmouth,* ___ Mass. App. Ct. at ___.[b] We think that the substance of the town's intention should be determined without fixing undue attention on the technical strictness of the meaning of the word "lease." See *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 597. Cf. *Taunton* v. *Taylor,*

___

[b] 294 N. E. 2d at 530.

116 Mass. 254, 261; *Board of Health of Wareham* v. *Marine By-Prods. Co.* 329 Mass. 174, 177. But, in any event, a lease is embraced within the language of §§ 3 and 4 of G. L. c. 40. A lease involves the "disposal or use of corporate property" for a period of time (§ 3) and even in its strictest sense (*Baseball Publishing Co.* v. *Bruton,* 302 Mass. 54, 55) is a form of contract (§ 4). *Berman* v. *Rowell,* 274 Mass. 260, 266. See *Boston Housing Authy.* v. *Hemingway, ante,* 184, 191, 198.

*Final decree of the Superior Court affirmed.*