JOAO VERTENTES *vs.* THE BARLETTA COMPANY, INC.

Suffolk. January 12, 1984. — June 11, 1984.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Negligence,* Construction work, Toward employee of independent contractor, Dangerous work.

A finding that the injuries sustained by an employee of a subcontractor on a highway rebuilding project were caused by the negligence of the general contractor in failing to supervise properly the safety procedures undertaken by its subcontractors in the placement of traffic marker barrels on the highway was not warranted where, although evidence showed the general contractor retained the authority and responsibility to supervise the safety procedures employed by the subcontractors, the evidence did not reveal any facts which would give rise to an inference that the general contractor performed this duty negligently. [167]

Discussion of the cases considering whether to extend the duty of care owed by an employer of an independent contractor who is performing inherently dangerous work to include the employees of the independent contractor. [167-169]

In a negligence action against the general contractor on a highway rebuilding project for injuries sustained by an employee of one of its subcontractors when struck by a truck while removing traffic marker barrels which a subcontractor had incorrectly placed, the general contractor was not vicariously liable for the negligence of its subcontractor in placing the markers, on the theory that the work delegated to the subcontractors constituted inherently dangerous activity. [169-171] ABRAMS, J., concurring.

CIVIL ACTION commenced in the Superior Court on May 12, 1976.

The case was tried before *Fine,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*William L. Patton (Steven A. Kaufman* with him) for the defendant.

*Michael B. Latti (Scott E. Charnas* with him) for the plaintiff.

*Michael A. Feinberg & Robert M. Schwartz,* for Massachusetts Building Trades Council, AFL-CIO, amicus curiae, submitted a brief.

NOLAN, J.   The plaintiff, Joao Vertentes, seeks further appellate review pursuant to G. L. c. 211A, § 11, after a decision of the Appeals Court.[1] The Appeals Court reversed the judgment on a jury verdict which had awarded him $900,000, for injuries suffered when he was struck by a motor vehicle in the course of his employment as a construction worker on a highway rebuilding project. *Vertentes* v. *Barletta Co.,* 16 Mass. App. Ct. 463 (1983).[2] After reviewing the factual and legal issues presented, we reverse the judgment of the Superior Court.

The defendant, The Barletta Company, Inc. (Barletta), contracted with the Department of Public Works (department) to reconstruct a ten-mile length of Route 24 between Brockton and Bridgewater. Route 24, as the contract stated, is a high-speed and high-volume major highway. In connection with this contract, Barletta subcontracted portions of the work to several independent contractors, including Richard F. Lyons, Inc. (Lyons). Vertentes was an employee of Lyons.

On the afternoon of September 26, 1974, Vertentes was struck by a truck driven by a person not connected with the construction. At the time of impact, Vertentes was removing orange marker barrels from the highway. These barrels had not been placed in accordance with department regulations. Although Lyons' personnel were working within the area, neither Barletta nor Vertentes introduced direct evidence indicating which subcontractor working in the area had placed the

---

[1] We thank the Massachusetts Building Trades Council, AFL-CIO, for its amicus brief.

[2] In Vertentes' application for further appellate review, he requested only that we consider the issue whether the duty of care owed to the public by an employer of an independent contractor who is performing inherently dangerous work, extends to employees of that independent contractor. Our inquiry, however, is not limited to those issues argued in the application for further appellate review. *Ballantine* v. *Falmouth,* 363 Mass. 760, 762 n.2 (1973).

barrels incorrectly in the roadway. Vertentes received work-
men's compensation benefits from Lyons and a settlement from
the driver of the truck.

The trial judge found as a matter of law that the removal of
barrels on a four-lane highway was an inherently dangerous
activity. She instructed the jury that Barletta could be vicari-
ously liable for the negligence of a subcontractor who placed
the barrels in the roadway without adequate signs warning
about the construction. The judge further instructed that Bar-
letta could be found directly negligent for failing to supervise
the safety precautions taken by its subcontractors in placing
the barrels on the road. The jury returned a verdict finding
Barletta 90% negligent and Vertentes 10% negligent. However,
the special questions answered by the jury failed to designate
the theory upon which Barletta was found negligent. On appeal
from the denial of Barletta's motion for judgment notwithstand-
ing the verdict, the Appeals Court reversed the judgment.

1. *Direct liability.* We have reviewed the evidence further
and conclude that a verdict based upon a finding that Barletta
negligently caused Vertentes' injuries by failing properly to
supervise the safety procedures undertaken by its subcontrac-
tors in the placement of the barrels would "rest[ ] in surmise
and conjecture." *Currie* v. *Lee Equip. Corp.,* 362 Mass. 765,
768 (1973). Vertentes merely established that Barletta retained
the authority and responsibility to supervise the safety proce-
dures employed by the subcontractors in the placement of the
barrels. The evidence does not reveal any facts which would
give rise to an inference that Barletta performed this duty
negligently.

2. *Vicarious liability.* Vertentes requests that we extend
the duty of care owed by an employer of an independent con-
tractor who is performing inherently dangerous work to em-
ployees of the independent contractor.[3] A hopeless conflict of
authority exists among those jurisdictions which have consid-

[3] Vertentes also contends that Barletta is vicariously liable under the
administrative regulation theory codified in the Restatement (Second) of
Torts § 424 (1965). Vertentes' failure to object to the omission of his
requested instructions on this theory precludes review on appeal.

ered this issue.[4] Vertentes suggests that this rule should be extended to employees for three reasons: (1) the authors of the Restatement (Second) of Torts intended employees to be included within the rule; (2) that it would be against public policy to deny relief to an employee based upon his employment status, and (3) that failure to extend the rule to employees of independent contractors would be inconsistent with G. L. c. 152, § 15, as amended through St. 1971, c. 941, § 1, which specifically allowed an employee a right of action against a third-party tortfeasor. We are not persuaded by any of these reasons and we hold that the duty owed by an employer of an independent contractor who is performing inherently dangerous work does not extend to the employees of the independent contractor.

Generally, an employer of an independent contractor is not liable for harm caused to another by an act or omission of the contractor or his employees. *Whalen* v. *Shivek,* 326 Mass. 142, 150 (1950). However, we held in *Whalen* that one who hires an independent contractor to perform work which is inherently dangerous is liable for failure to take precautions. *Id.*

[4] The following are jurisdictions which have extended the rule to employees of independent contractors: *Hagberg* v. *Sioux Falls,* 281 F. Supp. 460, 468 (D.S.D. 1968) (applying South Dakota law); *Van Arsdale* v. *Hollinger,* 68 Cal. 2d 245, 254 (1968); *Chesapeake & Potomac Tel. Co.* v. *Chesapeake Utils. Corp.,* 436 A.2d 314, 329-332 (Del. 1981) (applying Maryland law); *Giarratano* v. *Weitz Co.,* 259 Iowa 1292, 1308 (1967); *Mallory* v. *Louisiana Pure Ice & Supply Co.,* 320 Mo. 95, 117 (1928); *Watson* v. *Black Mountain Ry.,* 164 N.C. 176, 182 (1913); *Gonzalez* v. *United States Steel Corp.,* 248 Pa. Super. 95, 105 (1977), aff'd 484 Pa. 277 (1979).

The following are jurisdictions which have not extended the rule to employees of independent contractors: *Welch* v. *Heat Research Corp.,* 644 F.2d 487, 489 (5th Cir. 1981) (applying Texas law); *Nelson* v. *United States,* 639 F.2d 469, 479 (9th Cir. 1980) (applying Federal maritime law); *Sloan* v. *Atlantic Richfield Co.,* 552 P.2d 157, 159 (Alaska 1976); *Welker* v. *Kennecott Copper Co.,* 1 Ariz. App. 395, 403 (1965); *Jackson* v. *Petit Jean Elec. Co-op.,* 270 Ark. 506, 510 (1980); *Florida Power & Light Co.* v. *Price,* 170 So.2d 293, 298 (Fla. 1964); *Conover* v. *Northern States Power Co.,* 313 N.W.2d 397, 404 (Minn. 1981); *Donch* v. *Delta Inspection Servs. Inc.,* 165 N.J. Super. 567, 574-575 (1979); *Humphreys* v. *Texas Power & Light Co.,* 427 S.W.2d 324, 330 (Tex. 1968); *Epperly* v. *Seattle,* 65 Wash. 2d 777, 783 (1965).

For purposes of the instant case, we assume, without deciding, that Barletta hired subcontractors (independent contractors) to perform inherently dangerous work, i.e. the removal of barrels on a well traveled highway, and that as a result of failure to take precautions, the plaintiff, an employee of a subcontractor, was injured. The question is whether the rule of *Whalen* applies to such an employee. We answer, No.

Vertentes asserts that because the authors of the Restatement (Second) of Torts did not adopt a specific exclusion for employees of independent contractors, they intended employees to fall within the protections under §§ 416 and 427, which are set forth in the margin.[5] See *Hagberg* v. *Sioux Falls,* 281 F. Supp. 460, 468 n.7 (D.S.D. 1968). Specifically, Vertentes argues that the language, "peculiar risk of physical harm to *others*" in § 416, and "liability for physical harm caused *to such others*" in § 427 (emphasis supplied), must include employees of a subcontractor.

In the introductory notes to c. 15 of the Tentative Draft No. 7 (1962), of the Restatement (Second) of Torts, the authors indicated that employees of independent contractors should be expressly excluded from recovery under all exceptions to the general rule of nonliability. However, this special note was not included in the final 1965 draft. Vertentes suggests that the failure to include this special note in the final draft implies

---

[5] Restatement (Second) of Torts §§ 416 and 427 (1965) provide:

§ 416. "Work Dangerous in Absence of Special Precautions. One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

§ 427. "Negligence as to Danger Inherent in the Work. One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

that the authors of the Restatement (Second) of Torts intended employees of independent contractors to recover.

While some courts have found this omission significant, *Hagberg* v. *Sioux Falls, supra,* we do not. We believe that the authors intentionally left unclear the question whether an employee of an independent contractor should recover. We also note that all illustrations following §§ 416 and 427 deal only with members of the general public.

Second, Vertentes argues that if we exclude employees from recovery under this exception, we would be violating the "public policy" of our decisions in *Poirier* v. *Plymouth,* 374 Mass. 206 (1978), and *Mounsey* v. *Ellard,* 363 Mass. 693 (1973). Vertentes claims that *Poirier, supra,* which abolished the "hidden defect" rule as applied to employees of independent contractors, imposed a single duty of care under all circumstances. Thus it eliminated any distinctions based upon the status of the plaintiff. His argument continues that to deny relief to employees of independent contractors in this case would derogate from this rule.

*Poirier, supra,* sought to impose direct liability for the negligence of an employer or hirer of an independent contractor in failing to provide a safe work environment. *Id.* at 228. *Poirier* differs significantly from the instant case because Vertentes seeks to impose vicarious liability on the employer, a species of liability which is not predicated on the employer's direct negligence. We believe this difference renders the *Poirier* holding inapplicable.

Moreover, denial of recovery for an employee of an independent contractor does not encourage an employer to evade liability through the device of a contract with an independent contractor. See *Davis* v. *John L. Whiting & Son,* 201 Mass. 91, 93 (1909). An employer, Barletta in this case, does not escape liability either directly or indirectly because the contract price takes into account the independent contractor's potential workmen's compensation liability. *Welker* v. *Kennecott Copper Co.,* 1 Ariz. App. 395, 403-404 (1965). The employer of the independent contractor, in effect, pays the workmen's compensation premiums through the contract price. *Vagle* v. *Pick-*

*ands Mather & Co.,* 611 F.2d 1212, 1218 (8th Cir. 1979), cert. denied, 444 U.S. 1033 (1980).

If we were to permit recovery in this case on the basis of vicarious liability, an employee of an independent contractor would collect more compensation than an injured employee of Barletta, who would be limited to workmen's compensation benefits. This would impose a heavier burden upon employers who must rely on the services and expertise of independent contractors to perform hazardous work. See *Vagle* v. *Pickands Mather & Co., supra.* Furthermore, if we impose liability in cases such as this, employers of independent contractors who perform inherently dangerous work may demand indemnity from those contractors for any recovery obtained by the contractor's employees. This would expose independent contractors to potential liability far greater than that of other employers covered by workmen's compensation statutes. See *Anderson* v. *Chancellor W. Oil Dev. Corp.,* 53 Cal. App. 3d 235, 242 n.2 (1975).

We have considered the other arguments of Vertentes and find no merit in them. For all these reasons we hold that Barletta, as the general contractor, is not vicariously liable to the plaintiff, an employee of a subcontractor.

> *Judgment of the Superior Court reversed.*

ABRAMS, J. (concurring). I agree with the result reached by the court in this case. I believe a few additional comments will more fully place this decision in proper perspective.

In recent years, this court has scrutinized various common law barriers to recovery in negligence cases that focused on the status of the plaintiff or the defendant, and has eliminated several such status distinctions that were anachronistic and unduly confusing and which did not promote tort law objectives of fairly allocating the costs and risks of human injuries. Notwithstanding this salutary trend toward the elimination of invidious status distinctions, cases arise that call for the preserva-

tion or creation of standards of liability that differ according to the nature of the plaintiff or defendant. Because the circumstances of employees injured while performing inherently dangerous work for an independent contractor are dissimilar, in ways that should not be ignored, from those of members of the general public injured by the independent contractor's failure to take reasonable precautions, I concur in the court's holding that a general contractor is not vicariously liable to such employees for the independent contractor's negligence. *Ante* at 171. Such a rule places all employees working on a job in the same category and members of the public in another. That result fairly allocates the costs and risks of injuries and is not unfair.

In prior decisions, we rejected the notion that certain plaintiffs are less worthy than others for purposes of the standard of care for their personal safety to which a property owner should be held. Thus, in *Mounsey* v. *Ellard,* 363 Mass. 693 (1973), we jettisoned the licensee-invitee distinction, noting that "[an] owner's conduct in maintaining his premises does not depend on whether his visitor is a social or business acquaintance," and that "[a] visitor's safety does not become less worthy of protection by the law because he is a social guest and not a business invitee." *Id.* at 706. We also took note that the "ancient and largely discredited common law distinction" between licensees and invitees involved such minute subtleties that its application engendered confusion and inconsistent decisions on similar facts. *Id.* at 705-706. The distinction, we concluded, was not an equitable one and operated unnecessarily to prevent juries from "determining the fundamental question whether the defendant has acted reasonably in light of all the circumstances in the particular case." *Id.* at 707.

For similar reasons, we subsequently discarded our common law rule that a landlord owed a lesser duty of care in the maintenance of common areas to persons visiting a tenant than was owed to others lawfully on the property, finding "no logical basis for distinguishing among persons who enter private property for various legitimate purposes" in measuring the quantum of legal protection available. *Lindsey* v. *Massios,* 372 Mass.

79, 82 (1977). Shortly thereafter, we placed the landlord's duty to a tenant injured in a common area on a par with the duty owed to visitors, concluding that a tenant's theoretical access to knowledge about dangerous conditions existing on the premises did not sufficiently distinguish a tenant from a visitor as to justify the dual standards of care imposed until then under the "singular" common law rule of this Commonwealth. *King* v. *G & M Realty Corp.,* 373 Mass. 658, 660-661 (1977).

In the aftermath of the *King* decision, a property owner's duty to licensees, invitees, tenants, and tenants' guests was homogenized into a general duty to exercise reasonable care to prevent injury to such persons.[1] Persons performing work on the owner's property remained, however, in a disfavored status, the owner's duty to that class being limited to the disclosure of hidden defects of which the owner was or reasonably should have been aware. We culled the "hidden defect" doctrine from our negligence law in *Poirier* v. *Plymouth,* 374 Mass. 206 (1978), holding that the duty of care owed by an owner to an employee of an independent contractor working on the premises would now be the same as that owed to all other lawful visitors. We perceived no reason why such an employee "should . . . be made to suffer the negligence of the property owner," *id.* at 228, and consequently relegated to oblivion a status distinction that was "contrary to logic and sound modern values," *id.* at 223.

More recently, the court faced the question whether foreseeable adult trespassers, who remained second class citizens in the realm of tort law despite our movement away from status distinctions,[2] should likewise benefit from the general rule re-

---

[1] Following the reasoning of *Mounsey* and *Poirier,* we also eliminated status distinctions relating to a landlord's duty to visitors on the tenant's premises, *Young* v. *Garwacki,* 380 Mass. 162 (1980); and a theatre owner's duty to patrons, *Upham* v. *Chateau de Ville Dinner Theatre, Inc.,* 380 Mass. 350 (1980).

[2] Our "trend toward the imposition of a single duty of reasonable care by owners or occupiers of premises to all persons coming thereon," *Pridgen* v. *Boston Hous. Auth.,* 364 Mass. 696, 711-712 (1974), had, by the time of

quiring an owner not to be negligent with regard to the safety of persons on his or her property. A majority of the court was of the opinion that the contrast between societal attitudes toward trespassers and persons lawfully on an owner's property was of sufficient significance to justify the disparate legal treatment accorded the former category of plaintiffs in suits arising out of injuries incurred on the owner's property. *Schofield* v. *Merrill,* 386 Mass. 244 (1982). The dissenters, whom I joined, declared that status as a bar to recovery by trespassers for negligently inflicted injuries ran counter to the "fundamental concept that a man is liable for injuries caused by his carelessness," *id.* at 256 (Liacos, J., dissenting), quoting *Rowland* v. *Christian,* 69 Cal. 2d 108, 113 (1968), and found overly harsh a rule compelling dismissal, as a matter of law, of negligence claims by all categories of trespassers. *Id.*

Thus, our decisions for the most part indicate a readiness to eradicate illogical or inequitable status distinctions among tort plaintiffs. The cases demonstrate that the soundness of a given distinction must be analyzed on an individual basis. See *Soule* v. *Massachusetts Elec. Co.,* 378 Mass. 177, 185-186 (1979); *id.* at 187 (Hennessey, C.J., concurring). See also *Schofield* v. *Merrill, supra* at 258-259 (Liacos, J., dissenting). The origins of the distinction, its conformity with contemporary societal attitudes and public policy, and its consistency with predictable results are all factors to be evaluated.

The rule of law rendering one who employs an independent contractor to perform inherently dangerous work vicariously liable for damages to persons injured by the independent contractor's negligence imposes, like other vicarious liability doctrines, a duty to pay unrelated to any breach of duty to the plaintiff by the liable party. In the case before us, the evidence was insufficient to establish any negligence by the company

---

the *Schofield* decision, embraced certain subcategories of trespassers. See *Soule* v. *Massachusetts Elec. Co.,* 378 Mass. 177, 182 (1979) (landowner or occupier owes duty of reasonable care to foreseeable child trespassers); *Pridgen* v. *Boston Hous. Auth., supra* at 713 (owner owes common duty of reasonable care to trespassers helplessly trapped on premises with owner's knowledge).

from which the plaintiff seeks to recover. Unlike the cases summarized above, this case involves no status distinction sanctioning an incremental degree of carelessness by a defendant toward specified categories of victims. The question before us is whether an employee of a negligent independent contractor is distinguishable from a member of the general public in so far as the employer of the independent contractor's vicarious duty of compensation is concerned.

The imposition of vicarious liability on the employer of an independent contractor who fails to take reasonable precautions in performing inherently dangerous work[3] "is grounded in a recognition that the possibility of harm to others is so great when the work activity is inherently dangerous that the law tolerates it only on terms insuring the public against injury." *Jackson* v. *Petit Jean Elec. Co-op,* 270 Ark. 506, 510 (1980). A party who requests and benefits from the performance of inherently dangerous work that may foreseeably injure members of the general public in the absence of special precautions is not permitted to escape financial responsibility for such injuries by a contractual delegation of the responsibility for such precautions to an independent contractor that may be judgment-proof. The additional source of recovery was intended "to protect those who have no direct involvement with the hazardous activity, are only incidentally exposed to its risks and have no direct means of insuring themselves against loss." *Id.*

An employee of an independent contractor who engages in inherently hazardous labor differs from a member of the general public in two significant aspects. First, the employee has contracted to perform the work, and generally obtains higher compensation precisely because of such risks. See *Poirier* v. *Plymouth,*

---

[3] The plaintiff does not rely on § 427A of the Restatement (Second) of Torts (1965), which imposes vicarious liability on an employer who has hired an independent contractor to perform "abnormally" rather than "inherently" dangerous work. Whereas under § 427 an employer is vicariously liable for the negligence of an independent contractor performing inherently dangerous work, under § 427A both the employer and the independent contractor are strictly liable for injuries occasioned by abnormally dangerous work.

374 Mass. 206, 227 (1978) ("a person who voluntarily enters into a contract of employment to repair an old and visibly decrepit monument may be in a position to demand substantial remuneration for the risk he or she is taking, but cannot demand that the monument be fortified and made safe for climbing"). Indeed, the circumstances in which the plaintiff was injured bear a close resemblance to those that we hypothesized in *Poirier* would justify insulating the third-party employer from liability even if, as was not demonstrated in this case, the third-party employer had known of the misplacing of the barrels. *Id.* at 227 n.9. With such a situation in mind, we specifically stated that we did not intend "to preclude . . . a proper allocation of risk between the parties nor to make the [third-party employer] an insurer against all loss." *Id.* at 227. Where, as in this case, the general contractor was not shown to be negligent, the case is even stronger for cutting off the contractor's liability and limiting the plaintiff to recovery from the responsible subcontractor.

An equally fundamental distinction between employees injured on the job and passersby or other members of the general public is that employees are insured for their injuries under our workmen's compensation law. Thus, employees are assured of recovery whereas members of the general public are relegated to the hazards of litigation. The concern that persons injured through the negligence of an independent contractor performing inherently dangerous work might go uncompensated, on which the vicarious liability doctrine is founded, is simply not applicable in the case of an employee.

Under the "common employment" doctrine, the employee of a subcontractor was barred from a negligence action against the general contractor. *Clark* v. *M.W. Leahy Co.,* 300 Mass. 565, 568-569 (1938). In response to criticisms that the "common employment" doctrine focused exclusively on the availability of financial relief to the victim while ignoring "the moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer," 2A A. Larson, Workmen's Compensation § 71.10 (1983), the Legislature by statutory amendment abolished the common employment rule so as to permit, inter

alia, the employee of an insured subcontractor to maintain a cause of action against a negligent general contractor. G. L. c. 152, § 15, as amended through St. 1980, c. 488. Where the general contractor has not been negligent, however, neither the objective of ensuring that the victim is compensated nor the objectives of equitable allocation of damages and deterrence of harmful conduct are served by allowing a third-party action by the independent contractor's employee against the general contractor.

For these reasons, I view the distinction, in the context of the vicarious liability doctrine we here consider, between an employee and a nonemployee, as one based on real, rather than archaic or illogical, differences. Further, a rule that encompassed an independent contractor's employee in the class of victims entitled to recover from the third-party employer for the independent contractor's failure to take reasonable precautions would create an indefensible status distinction between employees of an independent contractor and employees working directly for the general contractor. I can think of no justifiable reason for limiting employees in the latter category to workmen's compensation benefits while permitting those in the former category to obtain a higher measure of recovery for injuries sustained in identical circumstances. Because a person's status as an employee or nonemployee is the result of conscious choice, and only fortuity distinguishes employees of independent contractors from those working directly for the party for which inherently dangerous work is performed, I agree with the court's conclusion.