Edward JENKINS, Edward Jenkins, Jr., and Josephus Lawrence Tudor, By Their Father and Next Friend, Edward Jenkins, Plaintiffs,

v.

UNIROYAL, INC., Mayer Pollock Steel Corporation, Defendants.

MACHINERY MERCHANTS INTERNATIONAL, INC., Defendant and Third-Party Plaintiff,

v.

HOLUB IRON AND STEEL COMPANY, Third-Party Defendant.

UNIROYAL, INC., Plaintiff,

v.

MACHINERY MERCHANTS INTERNATIONAL, INC., Defendant.

Civ. A. Nos. 83–0323–F, 85–0330–F.

United States District Court, D. Massachusetts.

Aug. 27, 1987.

Harold Resnic, Springfield, Mass., for Jenkins, Jenkins Jr., and Tudor.

Jeffrey L. McCormick, Robinson Donovan, Springfield, Mass., for Mayer Pollock Steel.

Thomas J. Donoghue, Moriary, Donoghue & Leja, Springfield, Mass., for Machinery Merchants Intern., Inc.

Philip J. Callan, Jr., Doherty, Wallace, Springfield, Mass., for Uniroyal, Inc.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

### I. INTRODUCTION

This consolidated case arises out of an accident which occurred on defendant Uniroyal, Inc.'s ("Uniroyal") premises in Chicopee, Massachusetts, when plaintiff, Edward Jenkins, fell from a height of approximately thirty feet while working, removing pipe. In Civil Action No. 83–0323–F, plaintiffs brought suit under 28 U.S.C. § 1332 alleging that defendants' negligence in failing to warn plaintiff of unsafe working conditions caused plaintiffs' personal injury and loss of parental society. In Civil Action No. 85–0330–F, Uniroyal cross claimed against Machinery Merchants International, Inc. ("MMI") seeking declaratory relief based upon indemnity provisions in a contract between MMI and Uniroyal.

All three defendants in Civil Action No. 83–0323–F moved for summary judgment arguing that the undisputed facts of record did not establish that they owed plaintiff a duty of care. Uniroyal also moved for summary judgment on its cross claim against MMI. The Court referred these motions to a magistrate pursuant to Rule 3, Rules for United States Magistrates in the United States District Court for the District of Massachusetts; 28 U.S.C. § 636(b)(1)(B). On January 6, 1987, United States Magistrate Michael Ponsor issued his Report and Recommendation that the three defendants' motions for summary judgment be allowed and that Uniroyal's motion for summary judgment against MMI be denied.

Now before the Court are plaintiffs' and Uniroyal's objections to the Magistrate's recommendation. Having reviewed the record *de novo*, the Court disagrees with the Magistrate, holding that Uniroyal is entitled to judgment as a matter of law

against MMI in Civil Action No. 85–0330–F and that there are genuine issues of material fact barring entry of summary judgment on defendants' motions for summary judgment in Civil Action No. 83–0323–F.

## II. FACTUAL BACKGROUND

The Court views the facts established from the contents of discovery materials in the light most favorable to the party opposing the motion for summary judgment, "indulging all inferences favorable to that party." *Ismert and Associates v. New England Mutual Life Insurance*, 801 F.2d 536, 537 (1st Cir.1986) (citations omitted). However, the non-moving party has the obligation to set forth specific facts giving "some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). "The mere existence of a scintilla of evidence in support of [the non-movant's] position will be insufficient; there must be evidence from which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986). Likewise, Fed.R.Civ.P. 56(e) has been described as requiring that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denial, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at ——, 106 S.Ct. at 2514, 91 L.Ed.2d at 217. Applying these standards the Court analyzes the facts of record as follows.

In the fall of 1980 Uniroyal decided to dismantle a manufacturing plant it owned in Chicopee. In pursuit of this desire it contracted with MMI agreeing to sell MMI certain machinery and equipment ("M & E") located in the Chicopee plant. In return, MMI agreed to pay Uniroyal certain monies and to take responsibility for the removal of the materials being sold. The M & E purchased by MMI is defined in the purchase and sale agreement between Uniroyal and MMI ("Uniroyal/MMI Contract") as comprising three categories: (a) "major items of plant and production equipment specifically listed in Exhibit 1 to the agreement;" (b) "all other machinery and equipment" located at the plant *except* specifically-excluded items listed in Exhibits 2 and 3 to the agreement; and (c) certain spare parts. Also included in Exhibit 5 to the Uniroyal/MMI Contract is a provision numbered 7, stipulating: "Piping to equipment should be removed back to nearest header or shut-off valve." Uniroyal/MMI Purchase and Sale Agreement, appended to Plaintiffs' Memorandum in Support of Their Objection to the Magistrate's Ruling, as Exhibit A.

In a section entitled "Protection of Work and Property," this Contract provided that:

(a) The Contractor shall take all necessary precautions for the safety of employees of his own or other Contractors on the job site, the employees of [Uniroyal], *and all other persons* and shall comply with the safety rules and regulations of [Uniroyal] as well as applicable provisions of Federal, State, and Municipal safety laws and codes *to prevent accident or injury to property or persons on, about, or adjacent to the job site. The Contractor shall make good any damages, injury, or loss except as may be directly caused by agents or employees of [Uniroyal] or by visitors whose presence at the plant site can in no way be construed to be for the convenience of the Contractor or the performance of its obligations hereunder.*

Exhibit 6 to the Uniroyal/MMI Contract, "Regulations Governing Equipment Removal" (emphasis added). The term "Contractor" is defined as: "Buyer (MMI), any contractor hired by Buyer, any third party or third parties who may purchase items of M & E from Buyer, and any contractor or contractors hired by said third parties." *Id.*

Additionally, in section 9(f) of the Uniroyal/MMI Contract, MMI agreed to:

[S]pecifically assum[e] the obligations of a Contractor as set forth in Exhibit 6, entitled Regulations Governing Equipment Removal, attached hereto and made

a part hereof, and agrees to obtain the agreement of each Contractor to terms substantially equivalent to those set forth in Exhibit 6. [MMI] shall indemnify [Uniroyal] against any and all liability, cost and expense which [Uniroyal] may incur, sustain or be subject to on account of all claims of injury to person or property (including [Uniroyal's] property and employees) resulting from any act or omission of [MMI], its agents or employees, or the Contractors in the removal of M & E, whether or not also due in part to the negligence of [Uniroyal]. Nothing contained in this Agreement shall be interpreted to create any contractual relationship between [Uniroyal] and the Contractors other than [MMI].

At some point after entering into this Contract, MMI subcontracted the work of removing the purchased M & E to the third-party defendant in this case, Holub Iron and Steel Company ("Holub"). Some time later, Holub itself subcontracted with defendant Mayer Pollock to supervise Holub's men.[1]

While MMI, Holub and Mayer Pollock were involved in taking certain items from Uniroyal's plant, news of the dismantling independently reached the ears of a scrap metal dealer named Joseph DeFedele.

Prior to 1981 DeFedele had been in the business of purchasing various items at auctions. In 1981 he learned through *The Boston Globe* that an auction was going to be held at the Uniroyal premises in Chicopee. DeFedele was interested in anything that he could sell for scrap. Prior to the auction, DeFedele looked around the premises; he later successfully bid on a quantity of scrap steel, purchasing roughly fifteen or twenty lots of scrap. DeFedele returned for several days following the auction to collect the scrap he had purchased.

At some point during this period DeFedele noticed that "there was [sic] companies in there dismantling the factory." Deposition of Joseph DeFedele at 29. He spoke to "the guy that was in charge of the

other crews there, by the name of Mike," *id.* at 29, and asked him if he had anything he wanted to get rid of that might be of value to DeFedele. According to DeFedele, some other workers were having problems with asbestos and "Mike" was willing to let DeFedele take certain piping for free from one of the buildings where there was asbestos, just to get rid of it. *Id.* at 30. DeFedele stated that he did not know with whom "Mike" was working, but believed that he worked for Holub. *Id.* at 44. This person named "Mike" has yet to be identified with any certainty. However, DeFedele did state that during the removal of the piping, a Mr. Quigley, who DeFedele stated worked for Uniroyal, "looked around" at what DeFedele was doing. *Id.* at 83.

Even if it could be established that plaintiff was allowed to do the pipe removal by an employee of one of the defendants, it is clear that no one—"Mike" or anyone else—supervised or controlled DeFedele in any way once he had begun the pipe removal. DeFedele was adamant on this point: "No one was controlling me. I was doing the job on my own." *Id.* at 83.

At some point after DeFedele was told that he could remove the pipe, plaintiff Jenkins approached DeFedele; DeFedele asked him if he would like some work and plaintiff agreed. DeFedele employed plaintiff to cut pipe with a blow torch and paid him $30–$40 per day. *Id.* at 33–34. Plaintiff had been working for DeFedele on the site for four or five weeks prior to the accident. *See* Plaintiff's Affidavit in Support of His Opposition to Uniroyal's Motion for Summary Judgment.

On the day of the accident plaintiff states that he was cutting six-inch pipe approximately thirty feet above the floor. He had been hoisted by a fork lift up to the pipes and into a sitting position on the pipe itself. The pipe ran the entire length of the room, well over one-hundred feet and was attached to the ceiling by connecting rods. Plaintiff would make a cut in the

1. Defendants Holub and Mayer Pollock will hereinafter be referred to as "MMI's subcontractors" or "subcontractors."

pipe in front of him so that a four- or five-foot section would fall to the floor, then push himself backward to cut the next section. At some point the section of pipe he was sitting on broke loose from the ceiling, throwing him to the floor. He had not been provided a safety belt or lanyard for the work. *Id.*

Plaintiff's affidavit and deposition cast no light upon the question of who allowed DeFedele to work at the site, though plaintiff does state that he was under the sole supervision of DeFedele. Plaintiff stated that prior to the day of the accident, he had been using a blow torch from a fork lift but the fork lift was not available on the day he was hurt. Edward Jenkins Deposition at 80. Plaintiff explained that at the time of the accident, he told DeFedele that some of the connecting rods were not connected, but DeFedele told plaintiff that this was "all right" and that plaintiff should just keep cutting. *Id.* at 37. According to plaintiff, after he was injured the cutting job was finished by Holub. *Id.* at 39.

### III. DISCUSSION

When broken down to its essentials, this case involves blanket indemnity provisions in a contract between two principal parties, Uniroyal and MMI, a number of subcontracts executed in furtherance of the performance of the indemnitor, MMI, and the subsequent injury of plaintiff. At issue are the status of the various contracting parties and the duty owed plaintiff.

### A. Defendants' Motions for Summary Judgment on Liability

The thrust of defendants' argument is that they are entitled to judgment as a matter of law because they owed no duty of care to plaintiff. Upon review of the record the Court finds that given defendants' legal relationship to plaintiff there was a duty owed plaintiff. However, there remain material and genuine issues of fact regarding which defendant or defendants are liable.

It is a well-established rule in Massachusetts that owners or occupiers of land owe a common law duty of reasonable care to all lawful visitors. *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43, 51 (1973). At all times in question Uniroyal was the owner of the property at which the accident occurred. Given the duration of DeFedele's and plaintiff's work on the site, the purported permission given DeFedele by "Mike" and the notice to Uniroyal through its agent, Mr. Quigley's observation of DeFedele's work, plaintiff was at least lawfully on Uniroyal's premises and was not a trespasser or intermeddler. Hence, Uniroyal owed plaintiff a duty of reasonable care.

Considering this theory of landowner liability, defendants' reliance on the supreme judicial court's decision in *Vertentes v. Barletta Co., Inc.,* 392 Mass. 165, 466 N.E.2d 500 (1984), is misplaced. In *Vertentes* the court faced the different question of whether the duty owed by a general contractor to an independent contractor performing inherently dangerous work should extend to the employees of the independent contractor. In the instant case, in accord with the common law duty owed by landowners and the indemnity provisions contained in the Uniroyal/MMI Contract, liability should flow from Uniroyal to MMI and possibly down to MMI's subcontractors.

The status of the various subcontractors is problematic in that there remain genuine issues of fact regarding the content of the agreements between both MMI and Holub, and Holub and Mayer Pollock. According to the Uniroyal/MMI Contract, at least Holub would be considered a "Contractor" as it is defined in Exhibit 6 to that Contract. This is true because Holub was a "contractor hired by Buyer (MMI)." Presumably then, Holub would be subject to the provisions of Exhibit 6 of the Uniroyal/MMI Contract at least insofar as its obligations to Uniroyal are intertwined in the undisclosed MMI/Holub Contract.[2]

---

**2.** There is, in section 9(f) of the Uniroyal/MMI Contract, a sentence stating: "Nothing con- tained in this Agreement shall be interpreted to create any contractual relationship between

The subcontractors' status is also difficult to divine because there is a genuine issue regarding who hired or invited and permitted plaintiff's employer, DeFedele, to perform the pipe removal. Considering the duration of plaintiff's work on the site and plaintiffs' evidence of the at least implied consent of persons in charge of the operation, plaintiffs have certainly come forward with a quantum of evidence sufficient to allow a jury to reasonably find that one of the defendants permitted DeFedele and plaintiff to work on the site. *See Anderson*, 477 U.S. at ——, 106 S.Ct. at 2512, 91 L.Ed.2d at 214; Fed.R.Civ.P. 56(e).

■ A question ancillary to this is that of which, if any, of the subcontractors, under their as yet undisclosed agreements, was responsible for the supervision of DeFedele or plaintiff. The broad language of the Uniroyal/MMI indemnity provisions indicates that MMI was to be held accountable for any inadequate supervision or lack of appropriate safety procedures. However, there may have been some further, undisclosed assumption by the subcontractors.

Defendants also attack plaintiffs' use of defendants' violation of state and federal safety regulations to prove defendants' negligence. The doctrine of "negligence per se" has been adopted in Massachusetts in a modified form. In this Commonwealth, a violation of a safety regulation is simply evidence of negligence; it does not, in and of itself, establish negligence. *Eagan v. Marr Scaffolding Co.*, 14 Mass.App. 1036, 442 N.E.2d 743, 745 (1982) (citations omitted), *review denied*, 388 Mass. 1102, 445 N.E.2d 156 (1983). Here plaintiffs claim that defendants violated safety regulations in failing to provide plaintiff with certain safety equipment. Even assuming defendants' violation is proven and is con-

clusive on the issue of defendants' negligence, at trial plaintiff will still have to show that defendants' violation caused his injury. Nolan, *Massachusetts Practice, Tort Law*, § 204 (1979).

■ Contrary to the Magistrate's recommendation, these safety regulations do not require that DeFedele or plaintiff be in a "contractual chain with MMI." Magistrate's Report and Recommendation at 15. They require only that DeFedele or plaintiff as an "employee" be "permitted to work." 441 CMR 10.02(12). Furthermore, MMI's duties under the Uniroyal/MMI Contract include the obligation to:

> take all necessary precautions for the safety of employees of his own or other Contractors on the job site, the employees of Seller, *and all other persons* and [to] comply with the safety rules and regulations of Seller as well as *applicable* provisions of Federal, State and Municipal safety laws and codes to prevent injury to property or *persons* on, or about, or adjacent to the job site.

Uniroyal/MMI Contract, Exhibit 6, section 3(a) (emphasis added). This broad form of indemnification served both to transfer Uniroyal's liability as a landowner and to notify MMI of the "applicable" safety standards.[3]

While the question of the applicability of federal safety regulations at this job site is difficult, it is clear that the state regulations plaintiffs cite pertain. The purpose of the regulations at issue is "to protect the health and safety of employees and others," 441 CMR 10.01(1), engaged in, *inter alia*, "the total or partial dismantling or razing of any project embraced within the scope of this code." 441 CMR 10.02(9). The "scope" of the code includes "all activities related to the erection, construction,

---

Seller (Uniroyal) and Contractors other than Buyer (MMI)." However, this is not to say that the subcontractors could not have otherwise assumed MMI's indemnity obligations.

**3.** The one class of plaintiffs to whom the indemnity provisions under the Contract do not apply are those whose injury is *"directly caused* by agents or employees of Seller (Uniroyal) or by those visitors whose presence at the plant site

can in no way be construed to be for the convenience of the Contractor (MMI or subcontractors) or the performance of its obligations hereunder." Uniroyal/MMI Contract, Exhibit 6, section 3(a) (emphasis added). There is no evidence that plaintiff's injury was directly caused by any such agent, employee or visitor. Therefore, this exemption from the indemnity provision will not apply.

alteration, demolition, repair or maintenance of buildings, structures, ... and all other construction projects or facilities." 441 CMR 10.01(3). Also, an "employee" is defined as "any person directed or *permitted* to work by an employer, having specific regard to any of the activities included in the scope of this code." 441 CMR 10(12) (emphasis added). "Employer" is defined under these regulations as:

> Any corporation, partnership, individual proprietorship, joint venture, firm, company or other similar legal entity engaged in activities included in the scope of this code or any person acting in the direct interest of any of the foregoing in relation to any employee or place of employment having specific regard to any of the activities included in the scope of this code.

441 CMR 10.02(13).

As earlier mentioned, the evidence demonstrates that DeFedele and plaintiff were "permitted" to work on this site fitting them within the definition of "employee." And it is apparent that MMI and the subcontractors could be considered an "employer." Also, there is no question that the dismantling or removal operation at the Uniroyal plant would fall within the scope of the operations covered by these regulations. Therefore, plaintiff was entitled to "reasonable and adequate protection of his li[fe], health and safety." 441 CMR 10.-03(1)(a). Under the regulations this would entail providing plaintiff with appropriate safety equipment which was undisputedly lacking here.

■ In accord with the directive under Fed.R.Civ.P. 56(d), to acknowledge "the facts that appear without substantial controversy," the Court finds that it has been established that at least one of the defendants violated these regulations and that plaintiff was within the class intended to be protected under them. Under the "negligence per se" doctrine, this constitutes evidence of negligence sufficient to defeat defendants' motion for summary judgment. However, there remains a genuine issue as to which defendant or defendants should be held liable. If this cannot be established,

then Uniroyal, as the landowner, would be held liable under its duty in that status. At that point the indemnity provisions under the Uniroyal/MMI Contract would take effect.

### B. Motion of Defendant Uniroyal for Summary Judgment on Cross Claim Against Codefendant MMI in Civil Action No. 85–0330–F

■ The Magistrate recommended the denial of Uniroyal's motion for summary judgment on its cross claim against MMI in Civil Action No. 85–0330–F, seeking declaratory relief based on the indemnity provisions in the Uniroyal/MMI Contract. While Uniroyal has not objected to the Magistrate's recommendation on this point, the Court's ruling on plaintiffs' objection necessitates a new determination.

The indemnity provisions of the Uniroyal/MMI Contract are so broad that there is no plausible argument that they should not apply in this case to shift Uniroyal's liability to MMI. In the Contract, MMI assumes liability for:

> any and all liability, cost and expense which [Uniroyal] may incur, sustain or be subject to on account of all claims of injury to persons or property (including [Uniroyal's] property and employees) resulting from any act or omission of Buyer, its agents or employees, or the Contractors in the removal of M & E, whether or not also due in part to the negligence of [Uniroyal].

Uniroyal/MMI Contract § 9(f). MMI also agreed to:

> make good any damages, injuries or loss except as may be *directly caused* by agents or employees of [Uniroyal] or by visitors whose presence at the plant site can in no way be construed to be for the convenience of the Contractor or the performance of its obligations hereunder.

*Id.* at Exhibit 6, § 3(a) (emphasis added). The Court has determined above that no such agents, employees or visitors "directly caused" the alleged injury. Similarly, MMI agreed to:

> indemnify and hold harmless [Uniroyal] and its employees from all liability, loss,

and expense (including costs of defense, settlement, and reasonable attorney's fees) which [Uniroyal] may incur ... as a result of any claim, suit, or action against [Uniroyal] by a third party arising out of ... the performance by [MMI] or any subcontractors it may be permitted to engage of obligations hereunder [sic] including removal of equipment, demolition work or clearing of the plant site.

*Id.* at Exhibit 6, § 3(d).

The supreme judicial court has recognized that express contracts of indemnity "are to be fairly and reasonably construed to ascertain the intent of the parties and to effectuate their purpose." *Whittle v. Pagani Brothers Construction Co., Inc.,* 383 Mass. 796, 422 N.E.2d 779 (1981) (citing *Shea v. Bay State Gas Co.,* 383 Mass. 218, 418 N.E.2d 597 (1981)). In *Whittle,* the court faced a general contractor's assertion of indemnity from a tort claim filed by an employee of a subcontractor. The subcontractor had entered into a contract with the general contractor agreeing, *inter alia,* to indemnify the general contractor against claims for personal injuries to employees of the subcontractor. The court upheld the indemnity provision recognizing the subcontractor's assumption of liability. *Id.* at 422 N.E.2d at 781.

Construing the indemnity provisions of the Uniroyal/MMI Contract "fairly and reasonably ... to ascertain the intent of the parties and to effectuate their purpose," *id.,* it is clear that Uniroyal should be indemnified by MMI from plaintiffs' claims in this case.

### IV. CONCLUSION

For the reasons set forth above, the motions for summary judgment of defendants Uniroyal, Inc., Mayer Pollock Steel Corporation and Machinery Merchants International, Inc., against plaintiffs in Civil Action No. 83–0323–F, are DENIED. Also, the motion for summary judgment filed by Uniroyal, Inc. against Machinery Merchants International, Inc., based on its

cross claim in Civil Action No. 85–0330–F, is ALLOWED.

It is So Ordered.