JOHN LARKIN vs. RALPH O. PORTER, INC.;
CEBCO CORP., third-party defendant
(and a companion case[1]).

Middlesex. February 8, 1989. — June 15, 1989.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Indemnity. Workmen's Compensation Act*, Action against third person. *Negligence*, Construction work, Toward employee of independent contractor.

A general contractor was not entitled to maintain a claim for indemnification from a subcontractor insured under the workmen's compensation statutes for a judgment against the general contractor in an action brought by the subcontractor's employees who were injured in an industrial accident, where there was no express or implied contract of indemnity between the contractor and subcontractor and where their relationship implied no right to indemnification. [181-186]

CIVIL ACTIONS commenced in the Superior Court Department on November 28, 1983, and May 7, 1984, respectively.

After the cases were consolidated for trial a motion for summary judgment was heard by *Joseph S. Mitchell, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert H. Flynn* (*Brian P. Fay* with him) for Ralph O. Porter, Inc.

*C. Mark Furcolo* (*John E. Bowen* with him) for Cebco Corp.

ABRAMS, J. Ralph O. Porter, Inc. (Porter), appeals from a summary judgment dismissing its cross claim for indemnification against Cebco Corp. (Cebco). Porter was the general contractor for a project which involved converting an old warehouse in Stoneham into an office building. Porter engaged

---

[1] Glenda M. Lahey and Harold M. Lahey *vs*. Cebco Corp., Randolph LaBonte, Charles Bartlett, and R.A. LaBonte Corp. As we explain in the body of the opinion, the only parties before us on appeal are Ralph O. Porter, Inc., and Cebco Corp.

Cebco as a subcontractor to patch and paint the exterior of the building. On August 9, 1983, Cebco's scaffolding equipment at the project collapsed. Two of Cebco's employees, Harold Lahey and John Larkin (collectively, the plaintiffs), fell from the scaffolding and sustained injuries during the course of their work. Cebco paid workers' compensation benefits to Lahey and Larkin.

The plaintiffs sued Porter and other defendants, and Porter cross claimed against Cebco, seeking indemnification for any judgment entered against Porter.[2] Porter settled with the plaintiffs. Both Porter and Cebco filed cross motions for summary judgment on Porter's claim for indemnification. Cebco argued that Porter's claim for indemnification was barred by the workers' compensation act which provides that an employer's payment of workers' compensation to its employees constitutes a release to the employer "of all claims or demands at law, if any, arising from the injury." G. L. c. 152, § 23 (1986 ed.). The Superior Court judge allowed Cebco's motion for summary judgment. We affirm.

We summarize the facts. Porter did not have experience patching and painting the exterior of buildings as high as the one involved in its project. Porter therefore sought to hire a skilled contractor to perform the patching and painting. Charles Bartlett, an officer of Cebco, telephoned Porter on or about July 3, 1983. According to Stephen Porter, an officer of Porter, Bartlett represented that the painting of the Stoneham building was an easy job, that Cebco was familiar with that type of job, and that Cebco had the necessary equipment to perform the work.

---

[2] Glenda M. Lahey brought suit in Superior Court for Middlesex County against Cebco, Randolph LaBonte, Charles Bartlett, and R.A. LaBonte Corp. She alleged loss of consortium. Harold Lahey eventually joined his wife in this action. John Larkin brought suit against Porter in Superior Court for Norfolk County. In that case, Porter brought a third-party complaint against Cebco. The Norfolk action was consolidated with the Middlesex action. The Laheys then added Porter as a defendant, and Porter cross-claimed against Cebco. Porter's third-party complaint and its cross claim are similar and raise the same issue. For simplicity, we will refer to Porter's cross claim only.

On July 7, 1983, Cebco submitted a written proposal to Porter in which Cebco offered to do the required work for $3,000. The written proposal mentioned the type of work to be done and the scheduling of the work, but did not mention Cebco's obligations in the case of default. At a chance meeting at the job site sometime after July 15, 1983, Bartlett represented to Stephen Porter that Bartlett's partner, Randolph LaBonte, would supervise the performance of the subcontract. At some time during one of the conversations concerning the project, Porter asked Cebco to provide Porter with a certificate of insurance. After the accident occurred, Cebco furnished the certificate. The certificate named only Cebco as the insured, and specifically stated that the certificate conferred no right on the certificate holder (Porter).

Porter concedes that there was no express indemnity agreement between it and Cebco. Porter argues, however, that, in these circumstances, Cebco impliedly agreed to indemnify Porter for any judgment entered against it, and that this implied agreement defeats the exclusive remedy provisions of the workers' compensation act. Cebco responds that there was no implied agreement to indemnify in this case, and therefore the workers' compensation act bars recovery by Porter against Cebco. We agree with Cebco.

General Laws c. 152, § 23 (1986 ed.), provides: "If an employee . . . accepts payment of [workers'] compensation on account of personal injury . . . such action shall constitute a release to the insurer of all claims or demands at common law, if any, arising from the injury." See G. L. c. 152, § 24 (1986 ed.). This exclusivity provision ordinarily bars a third party sued by the employee from recovering against the negligent employer who has paid workers' compensation. 2A A. Larson, Workmen's Compensation Law § 76.00 (1988). "[A]ny right of a third-party tortfeasor to recover indemnity from an employer who has paid workmen's compensation benefits to an injured employee, must stem, if at all, from an express or implied contract of indemnity or from an obligation implied from the relationship of the parties." *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. 35, 37 (1983), citing *Liberty*

*Mut. Ins. Co.* v. *Westerlind,* 374 Mass. 524, 526-527 (1978). Assuming without deciding that we would recognize a right to indemnification from an employer based on an implied agreement, we conclude that there is no such implied agreement here.[3]

The only contract between Cebco and Porter was an agreement that Cebco would provide the service of patching and painting the building. The evidence submitted by Porter does not indicate that the requests Porter made to Cebco for an insurance certificate meant that Cebco was to insure Porter. Further, Cebco introduced Bartlett's affidavit testimony that the contract between Cebco and Porter "did not require Cebco to obtain insurance for Ralph O. Porter, Inc., as a named insured for injuries . . . which occurred at the project."

Porter argues, however, that the very fact that Cebco agreed to paint and patch the building for Porter implies an agreement to indemnify Porter for any loss. According to this argument, Cebco's agreement to provide services implies an agreement to perform the work in a workmanlike manner. See *Friese* v. *Boston Consol. Gas Co.,* 324 Mass. 623, 628 (1949), citing *Kelley* v. *Laraway,* 223 Mass. 182, 184 (1916). Such an implied agreement, according to Porter, necessarily includes an agreement to indemnify Porter when Cebco is negligent and fails to perform the job in a workmanlike manner. Porter relies on *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.,* 350 U.S.

---

[3] Courts of several jurisdictions have refused to allow the exclusivity provisions of their workers' compensation statutes to be bypassed by an implied agreement by the employer to indemnify. Rather, they require an express agreement by the employer. See, e.g., *Golden Valley Elec. Ass'n* v. *City Elec. Serv., Inc.,* 518 P.2d 65, 69 (Alaska 1974); *American Radiator & Standard Sanitary Corp.* v. *Mark Eng'g Co.,* 230 Md. 584, 586 (1963); *Linsin* v. *Citizens Elec. Co.,* 622 S.W.2d 277, 281 (Mo. Ct. App. 1981), citing *Parks* v. *Union Carbide Corp.,* 602 S.W.2d 188, 191 (Mo. 1980); *Bagwell* v. *South La. Elec. Coop. Ass'n,* 228 So. 2d 555 (La. Ct. App. 1969). In one case, we ourselves have said that to hold an employer liable to indemnify a third party is "a radical departure from the reasonable expectation of the parties, [which] is unwarranted in the absence of a clear expression in the contract." *New Bedford Gas & Edison Light Co.* v. *Maritime Terminal, Inc.,* 380 Mass. 734, 736 (1980). Nevertheless, because we conclude that there is no implied right of indemnification in the agreement between Porter and Cebco, we need not consider the question.

124 (1955), to support its argument. In *Ryan Stevedoring Co.*, the employee of a stevedoring company who was loading cargo on a ship was injured. Having been paid workers' compensation under the Federal longshoremen's act by his employer, the employee sued the owner of the ship. The owner then filed a third-party complaint against the employer. *Id.* at 125-127. The United States Supreme Court held that the employer's agreement to pack the cargo impliedly was "a contractual undertaking to stow the cargo 'with reasonable safety' and thus to save the shipowner harmless from petitioner's failure to do so." *Id.* at 130. This implied agreement to indemnify was held sufficient to overcome the exclusivity provision of the longshoremen's act. *Id.* at 133-134.

*Ryan* was decided under the peculiarities of admiralty law and the longshoremen's act.[4] See *Smith Petroleum Serv., Inc. v. Monsanto Chem. Co.*, 420 F.2d 1103, 1109 (5th Cir. 1970). Comment, Workmen's Compensation — Third Party Action — Liability of Negligent Employer for Contribution or Indemnification, 63 Mass. L. Rev. 181, 184 n.27 (1978). A majority of courts considering the issue as a matter of State law on workers' compensation have rejected the reasoning in *Ryan*, and have concluded that the mere fact of a service contract between the parties does not imply an indemnity agreement which defeats the exclusivity provision of the workers' compensation act. See, e.g., *Christie v. Ethyl Corp.*, 715 F.2d 203, 205 (5th Cir. 1983) (applying Mississippi law); *Centraal Stikstof Verkoopkanter, N.V. v. Walsh Stevedoring Co.*, 380 F.2d 523, 529-530 (5th Cir. 1967) (applying Alabama law); *Burrell v. Rodgers*, 441 F. Supp. 275, 278-279 (W.D. Okla. 1977) (applying Oklahoma law); *Golden Valley Elec. Ass'n v. City Elec. Serv., Inc.*, 518 P.2d 65, 69 (Alaska 1974); *Bagwell v. South La. Elec. Coop. Ass'n*, 228 So.2d 555, 561 (La. Ct. App. 1969); *American Radiator & Standard Sanitary Corp. v. Mark Eng'g Co.*, 230 Md. 584, 589 (1963); *Linsin*

---

[4] Congress subsequently amended the longshoremen's act so that the holding of *Ryan* no longer controls. See 33 U.S.C. § 905(b) (1982); *Marr Equip. Corp. v. I.T.O. Corp. of New England*, 14 Mass. App. Ct. 231, 233 (1982).

v. *Citizens Elec. Co.*, 622 S.W.2d 277 (Mo. Ct. App. 1981); *Royal Indem. Co.* v. *Southern Cal. Petroleum Corp.*, 67 N.M. 137, 143 (1960); *Grede Foundries, Inc.* v. *Price Erecting Co.*, 38 Wis. 2d 502, 506 (1968); 2A A. Larson, Worker's Compensation § 76.71 (1988).[5]

We have not recognized an implied right of indemnity as broad as that advanced by Porter, and decline to do so here.[6] If courts are to infer an agreement on the part of employers to indemnify from "the fact that the [employer] contracted to do some work . . . the result will be that the employer is wholly deprived of the protection of limited liability which the Act was intended to provide." *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.*, *supra* at 146-147 (Black, J., dissenting).

We have inferred the existence of indemnity agreements only when the terms of the contract themselves contemplated such indemnification. See, e.g., *Monadnock Display Fireworks, Inc.* v. *Andover*, 388 Mass. 153, 158 (1983) (where town agreed to furnish necessary police for proper crowd control, it was responsible to indemnify for damages arising from its failure to do so); *Great Atl. & Pac. Tea Co.* v. *Yanofsky*, 380 Mass. 326, 331-332 (1980) (where a lessor agreed to make all outside repairs, "such [an] express agreement" should be construed to require the lessor to indemnify for damages arising

---

[5] For examples of the minority view that the mere fact of a contractual agreement between the parties gives rise, under the *Ryan* analysis, to an implied duty to indemnify, see, e.g., *Blackford* v. *Sioux City Dressed Pork, Inc.*, 254 Iowa 845, 852 (1962); *Wentworth Hotel, Inc.* v. *F.A. Gray, Inc.*, 110 N.H. 458, 460-461 (1970); *United States Fidelity & Guar. Co.* v. *Kaiser Gypsum Co.*, 273 Or. 162, 170 (1975).

[6] In *Maddalone* v. *Empresa Lineas Maritimas Argentinas*, 370 Mass. 864 (1976), we considered a set of facts identical to those in *Ryan*. A longshoreman employed by a stevedoring company was injured and sued the owner of the vessel who in turn sued for indemnification from the stevedoring company. Because the case involved a vessel and a stevedoring company, we considered "[t]he warranty of workmanlike performance, whose scope and applicability are matters of Federal law," and we said that this Federal warranty doctrine is "a crucial part of the stevedore/vessel relationship." *Id.* at 865. Because the case before us does not concern matters of Federal law, the holding of *Maddalone* is not controlling here. Further, *Maddalone* did not discuss the subsequent emendation of the longshoremen's act which effectively preempted *Ryan*. See note 4, *supra*.

from the failure to make repairs). See also *Croall* v. *Massachusetts Bay Transp. Auth.*, 26 Mass. App. Ct. 957, 958-959 (1988). "[C]ourts do not ordinarily stretch language in order to find that one person has agreed to indemnify another when the latter negligently hurts someone. Special caution should be used in construing contracts so as to impose indemnity liability on companies not engaged in the business of writing indemnity insurance." *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.*, *supra* at 142-143 (Black, J., dissenting).

Further, the "relationship of the parties," *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. 35, 37 (1983), does not itself imply a right to indemnification. To the contrary, the relationship between Porter and Cebco militates against a conclusion that a right of indemnity exists. "This right to indemnity is limited to those cases in which the would-be indemnitee is held derivatively or vicariously liable for the wrongful act of another." *Id.* at 40, citing *Stewart* v. *Roy Bros.*, 358 Mass. 446, 459 (1970). In *Vertentes* v. *Barletta Co.*, 392 Mass. 165 (1984), we specifically held that a general contractor could not be held vicariously liable to the employee of its subcontractor when that employee is injured because of an act or omission of the subcontractor. *Id.* at 168-169.[7] We reached this conclusion in part because, if we were to impose such liability, general contractors who employ subcontractors "may demand indemnity from those contractors for any recovery obtained by the contractor's employees. This would expose independent contractors to potential liability far greater than that of other employers covered by workmen's compensation statutes." *Id.* at 171.

"We are aware of the strong criticism of the rules that . . . only in limited circumstances may a third party recover indemnification from an insured employer. . . . We also note that

---

[7] Of course, if the injured party is not an employee but a member of the public, the general contractor may be held vicariously liable for the acts or omissions of its subcontractor. In such a case, the subcontractor may be held duty bound to indemnify the general contractor. See *Garbincius* v. *Boston Edison Co.*, 621 F.2d 1171, 1175 (1st Cir. 1980) (applying Massachusetts law).

strong policy arguments exist on both sides of the issue . . . . Such conflicting policy considerations are best resolved in the Legislature where the resolution can be based on full consideration of the competing interests and the ramifications involved with any change of the legislative scheme of G. L. c. 152" (citations omitted). *Liberty Mut. Ins. Co.* v. *Westerlind, supra* at 527. See *Decker* v. *Black & Decker Mfg. Co., supra* at 42.[8]

The dismissal of Porter's cross claim against Cebco was correct.

*Judgment affirmed.*

---

[8] In 1985 and 1986, the Legislature substantially revised the statutory scheme of workers' compensation. St. 1985, c. 572. St. 1986, c. 662. Nevertheless, the Legislature left intact the exclusivity provision of the workers' compensation law, providing no exception in cases where a defendant sued by an employee seeks indemnification over against the negligent employer.