Fecteau, Francis R., J.
The plaintiff in the underlying tort action, Robert Rouleau (“Rouleau”), filed a complaint against Maki Corporation (“Maki”), seeking damages for injuries he sustained while working on a construction project for which Maki was the general contractor. Maki then brought a third-party complaint against Bret Steel Corporation (“Bret”) seeking indemnification and contribution from Bret with respect to Rouleau’s claims. Bret now moves for summary judgment on Counts V and VI of the third-party complaint, contending that there is no valid and enforceable indemnification agreement between the parties. On May 4, 2005, the court heard oral argument on this motion. For the reasons that follow, Bret’s motion for summary judgment is denied.

BACKGROUND

The material undisputed facts and the disputed facts viewed in the light most favorable to Maki, the non-moving party, as revealed by the summary judgment record, are set forth below.
Maki was the general contractor on a construction project known as the “Specialty Wholesale Project” (“the project”) in Gardner, Massachusetts. Maki contracted with HBH Steel, Inc., d/b/a Metrowest Steel (“Metrowest”), to provide steel for the project. Metrowest then contracted with Bret to perform the steel erection work. Metrowest and Bret were parties to an Annual Subcontract Agreement that became effective on October 1, 1999 (“the Agreement”). The Agreement governed “all work performed under Purchase Orders issued by Contractor to Subcontractor during the period from October 1, 1999, through September 30, 2000.” Ex. 11 at 1. On October 6, 1999, according to the parties’ usual business practice, Metrowest issued a purchase order to Bret for the steel erection work it was enlisted to perform on the project. This purchase order incorporated the Agreement by reference. Article 2 of the Agreement states that the “Subcontract Documents” consist of, among other documents, “the Contract between General Contractor and Contractor.” Ex. 11 at 1. In addition, Article 4 contained the following indemnity provision:
To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless the Owner, General Contractor, and their agents and employees, from and against all claims, damages, losses and expenses, including but not limited to attorneys fees, arising out of or resulting from the performance of its Work under this agreement, provided that such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of Subcontractor, its sub-subcontractors, or anyone directly or indirectly employed by them or anyone for whose acts they may be liable regardless of whether such claim, damage, loss, or expense is caused in part by a party indemnified hereunder. The indemnification provision under this Paragraph 4.5 shall not be limited by any limitation on amount or type of damages, compensation or benefits payable by or for Subcontractor or its sub-subcontractors under any workers’ or workmen’s compensation act, disability benefit act, or other employee benefit acts.
(Ex. 11 at 2.) Maki did not directly contract with Bret for steel erection services on the project.[2]
Bret employed Rouleau as a foreman on the project to oversee the unloading of steel. In addition to other duties on the project, Rouleau was responsible for conducting weekly safety meetings with Bret workers. On Monday, June 26,2000, the accident giving rise to Rouleau’s tort claim against Maki occurred on the project site. While Rouleau was guiding a steel truss off of a crane, he walked backward, stepped into a trench, and lost his balance. The steel truss then swung free and hit another truss, crushing Rouleau’s *536 left hand between them. As a result of the accident, Rouleau sustained permanent, partially disabling injuries.
Rouieau received workers’ compensation benefits under Bret’s workers’ compensation liability insurance policy. Rouleau then asserted his tort claims against Maki, alleging that the negligent acts of Maki’s employees and agents caused him to sustain the injuries and damages for which he seeks recovery. Maki, in turn, filed a third-party complaint against Bret, Metrowest, and Dennis Wright, d/b/a Reliable Welding, seeking indemnification and contribution.[3]

DISCUSSION

This court grants summaiy judgment where there are no genuine issues of material fact and where the summaiy judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 360 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party can satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 710 (1991).
The issue before the court on this motion for sum-maiy judgment is whether Maki is entitled to indemnification under the broad indemnity provision contained in the annual subcontract agreement between Bret and Metrowest. The parties do not argue that the terms of the indemnity provision are ambiguous, nor do they claim extrinsic evidence is necessary to construe them. Where the terms of a contract are unambiguous, the court interprets the contract terms as a matter of law. Bardon Trimount, Inc. v. Guyott, 49 Mass.App.Ct. 764, 770 (2000). See Urban Investment & Development Co. v. Turner Construction Co., 35 Mass.App.Ct. 100, 106 n.4 (1993).
Bret contends that Maki’s indemnification claims are barred by the exclusivity provision of the Workers’ Compensation Act, G.L.c. 152, §24, because it has paid Rouleau workers’ compensation for injuries he sustained from the accident. The parties acknowledge that the exclusivity provision of the compensation act generally bars a third-party tortfeasor from seeking indemnification or contribution from an employer who has paid the employee workers’ compensation benefits. Larkin v. Ralph O. Porter, Inc., 405 Mass. 179, 181 (1989), quoting Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 37 (1983) (additional citations omitted). They also recognize, however, that a contract-based right to indemnification may stem from a binding express or implied contract of indemnity or from an obligation implied from the parties’ relationship, and which may override the immunity protection given the employer by the compensation act. Larkin, 405 Mass. at 181, quoting Decker, 389 Mass. at 37. See Kelly v. DiMeo, Inc., 31 Mass.App.Ct. 626, 628 (1991), citing H.P. Hood & Sons, Inc. v. Ford Motor Co., 370 Mass. 69, 77 (1976).
Bret maintains that the exclusivity provision of the compensation act shields it from Maki’s indemnification claim, notwithstanding the possible contractual override of the immunity provisions, on the ground that since there is no contractual relationship between the parties, Maki does not obtain the benefit of a contract-based right to indemnification. In support of this argument, Bret cites to various cases where appellate courts have rejected indemnification claims premised upon an implied contract or an obligation arising from the relationship between the parties. See Larkin, 405 Mass, at 181 (services contract alone insufficient to establish implied contract-based right to indemnification); Decker, 389 Mass, at 38 (sales agreement alone insufficient to establish implied contract-based right to indemnification); H.P. Hood & Sons, 370 Mass, at 77 (insufficient evidence to establish that third-party defendant’s agent had the authority to enter into an oral implied indemnity contract).
However, Maki contends that it is entitled to indemnification on the express language of the Annual Subcontract Agreement between Bret and Metrowest, as an intended third-party beneficiary of the indemnity provision contained in the Agreement. Maki asserts that, under the express contractual indemnification provision of the annual contract, the exclusivity provision of the compensation act is overridden.
A third party may enforce a contractual provision in its favor where it is an intended beneficiary of the contract. Markel Servs. Ins. Agency, Inc. v. Tifco, Inc., 403 Mass. 401, 405 (1988), citing Rae v. Air-Speed, Inc., 386 Mass. 187, 194 (1982); Choate, Hall & Stewart v. SCA Servs., Inc., 378 Mass. 535, 542-46 (1979). To prevail under a third-party beneficiaiy theory, Maki must demonstrate that Bret clearly and definitely intended Maki to benefit from the promised performance. Miller v. Mooney, 431 Mass. 57, 62 (2000); Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 366 (1997). The court looks to the “language and circumstances of the contract for indicia of intention.” Anderson, 424 Mass. at 366, citing Choate, Hall & Stewart, 378 Mass. at 545-47.
The Annual Subcontract Agreement was incorporated by reference into all purchase orders Metrow-est issued to Bret for its work on construction projects from October 1, 1999, through September 30, 2000. The Agreement designates Metrowest as the “Contractor” and Bret as the “Subcontractor.” *537 The terms “General Contractor” and “Owner,” however, are not specifically defined. The indemnity provision, set forth in paragraph 4.5 of the Agreement, contains the following language: “To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless the Owner, General Contractor, and the Contractor, and their agents and employees, from and against all claims, damages, losses, and expenses . . . arising out of or resulting from performance of its Work under this agreement... but only to the extent caused in whole or in part by negligent acts or omissions of Subcontractor ... or anyone directly or indirectly employed by them . . . regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder ...” (Ex. 11 at 2.) An indemnity provision should be construed in accordance with its ordinary and plain meaning. Kelly, 31 Mass.App.Ct. at 629, citing deFreitas v. Cote, 342 Mass. 474, 477 (1961). In the case at bar, the plain meaning of the term “General Contractor” can only be construed to mean Maki, the general contractor on the project for which Metrowest issued Bret the purchase order. Maki was a foreseen third party to the Annual Subcontract Agreement because Bret was familiar with the terms of the subcontract and their application to every construction project on which it provided steel erection services for Metrowest.
The plain language of the indemnity provision clearly evidences an intent on the part of the contracting parties that Bret was to indemnify Metrowest. Bret’s knowledge and intentions are equally clear with respect to the general contractor of the construction projects where it provided steel erection services, especially given that the subcontract documents included more than simply the purchase order between the parties for the particular project in question, but also the contract between Metrow-est, as the contractor and the general contractor. Bret agreed to indemnify not only Metrowest, the party with whom it contracted, but also the “Owner, General Contractor, and their agents and employees.” See Level 3 Communications, LLC v. MCI Worldcom, Inc., No. 99-5641 (Middlesex Super.Ct. July 3, 2001) (Hinkle, J.), available at 13 Mass. L. Rptr. 420 (2001) (owner of building site entitled to indemnification despite lack of direct contractual relationship with the third-party defendant because he was the third-party beneficiary of a subcontract that expressly indemnified “Owner, Architect, Architect’s consultants, and [subcontractor]”). Cf. Herson v. New Boston Garden Corp, 40 Mass.App.Ct. 779, 781-82 (1996) (owner of property entitled to indemnification under indemnity provision in subcontract between general contractor and subcontractor where provision stated that “Subcontractor shall indemnify and hold harmless Owner and Contractor . . .).[4] It is reasonable to interpret Bret’s increased liability exposure as a product of its business relationship with Metrowest. See Kelly, 31 Mass.App.Ct. at 630 (“[The third-party defendant] agreed (perhaps in an effort to advance its business interests in the competitive arena of the construction industry) to underwrite fully the conduct of its ‘employees’ ”). The language and circumstances of the indemnity provision establish Maki as an intended third-party beneficiary of the Annual Subcontract Agreement, thereby providing Maki with an express contractual right to indemnification that overrides the exclusivity provision of the compensation act.
Under the terms of the indemnify provision and by statute, Bret’s obligation to indemnify Maki is only triggered by claims resulting in whole or in part from the negligence of Bret’s employees or agents. See G.L.c. 149, §29C (invalidating any provision in construction projects where subcontractor agrees to indemnify a party for injury to persons or property not caused by the subcontractor or its employees and agents); Herson, 40 Mass.App.Ct. at 788 (G.L.c. 149, §29C, does not preclude contractual indemnification where the subcontractor consents to indemnify all liability if both the contractor and subcontractor are causally negligent). After a review of the summary judgment record, including Rouleau’s deposition testimony, this court concludes that genuine issues of material fact remain regarding whether actions or omissions of Rouleau, or other employees of Bret Steel, Inc., were negligent contributions to this accident. Consequently, summary judgment is not appropriate in this case.

ORDER

For the foregoing reasons, it is hereby ORDERED that the Motion for Summary Judgment of the third-party defendant, Bret Steel, Inc., is DENIED.

Both Bret, and Metrowest had previously filed motions for summary judgment which had been denied. At argument on the within motion, counsel reported that following a period of discovery, it was agreed by Bret to defend Metrowest.

Maki concedes, as it must, that its contribution claim is barred by the exclusivity provision of the workers’ compensation act. See Liberty Mutual Insurance Company v. Westerlind, 374 Mass. 524, 526 (1978.)

Bret’s intention to indemnify parties in addition to Metrowest can also be seen in other language of the indemnification clause, wherein indemnification is required so long as Bret or its employees are responsible in part, notwithstanding that the “claim, damage, loss or expense is caused in part by a party indemnified hereunder.” [Emphasis added.] If the intention were otherwise, words expressing greater limitation would likely have been used.