PHILIP BRILLANTE *vs.* R.W. GRANGER & SONS, INC.,
& another[1]; BARLITE CONSTRUCTION, INC., third-party
defendant.

No. 00-P-35.

Middlesex. March 20, 2002. - July 29, 2002.

Present: JACOBS, CYPHER, & KANTROWITZ, JJ.

*Negligence. Practice, Civil,* Answer, Argument by counsel. *Evidence,* Impeachment of credibility. *Witness,* Impeachment. *Contract,* Subcontract, Performance and breach, Indemnity. *Contribution among Tortfeasors. Indemnity.*

The judge in a negligence action properly allowed the defendants to argue that the plaintiff had not fallen into a hole as he alleged and to attack, on cross-examination, the plaintiff and his witness with inconsistencies in their testimony and their numerous prior convictions. [544-546]

In an action for contribution, indemnification, and breach of contract arising out of construction subcontracts, the insurance requirements of the subcontractors were expressly and clearly stated in the subcontracts, which contained provisions displacing any conflicting requirements in the contract between the general contractor and a city; therefore, the subcontractors were not required to name the general contractor as an additional insured in their insurance contracts. [546-549]

CIVIL ACTION commenced in the Superior Court Department on March 17, 1993.

The case was tried before *Martha B. Sosman,* J., and posttrial motions for summary judgment were heard by her.

*Christine M. Franzese & Joseph P. Franzese* for the plaintiff.
*Mark W. Shaughnessy* for R.W. Granger & Sons, Inc.
*Joel F. Pierce* for Antico Excavating, Inc.
*Gregory R. Barison,* for Barlite Construction, Inc., was present but did not argue.

KANTROWITZ, J. According to the plaintiff, Philip Brillante, early one evening, a taxi dropped him off at a construction site

---

[1]Antico Excavating, Inc.

across the street from his intended destination, a bar in Somerville. Upon alighting from the cab, he fell into a hole and injured himself. Not surprisingly, he sued numerous entities and persons: the cab company; the cab driver; the city of Somerville; the owner of the property; the general contractor, R.W. Granger & Sons, Inc. (Granger); and one subcontractor, Antico Excavating, Inc. (Antico).

In turn, the general contractor Granger filed a crossclaim against the subcontractor Antico and a third-party complaint against a second subcontractor, Barlite Construction, Inc. (Barlite), seeking contribution, indemnification, and costs and attorney's fees for defending the suit.

When the plaintiff's case was ultimately tried before a jury, the sole remaining defendants were Granger and Antico.[2] The plaintiff lost. He now appeals, claiming that the trial judge erred in allowing the defendants, who did not affirmatively plead fraud, to argue that the plaintiff did not fall into a hole as alleged; and in allowing the defendants to use the criminal convictions of the plaintiff and a witness for impeachment. We affirm.

After the jury verdict, Granger moved for summary judgment on its claims against Antico and Barlite, both of which in turn filed their own motions for summary judgment. The judge denied Granger's motions, and allowed those of Antico and Barlite. Granger appeals. We affirm.

*Factual background.* Granger contracted with the city of Somerville to build a municipal parking facility in the Davis Square area of Somerville. Granger then entered into various subcontracts, two of which are of significance: (1) a subcontract with Antico to furnish all the material and equipment required for site clearing, earth work, cleaning drainage structures, water service and sewer system; and (2) a subcontract with Barlite to furnish all the material and equipment for granite and precast curbing work.

The plaintiff alleged that he suffered serious bodily injury on March 25, 1990, at approximately 8:30 P.M., when he fell into an unprotected ditch at the construction site in Somerville. The

---

[2]Prior to trial, the defendants cab company and the city settled with the plaintiff, the defendant cab driver Reynolds died, and Harvard Community Health Plan was dismissed as a defendant.

plaintiff testified that earlier in the evening he met an acquaintance, Jerry Jones, and the two decided to go to the plaintiff's apartment to have dinner. En route, in a cab, they changed their minds and directed the driver, Reynolds, to take them to a bar called the Bull Pen Pub. While Jones was paying the driver, who had let them off near a construction site across the street, the plaintiff stepped out of the cab and fell into an unprotected ditch.[3] Jones and Reynolds helped him back into the cab and Reynolds drove them to Somerville Hospital.

The parties' defense against the plaintiff's claims was to attack the credibility of the plaintiff and Jones by highlighting inconsistencies in their statements and their prior convictions for crimes involving dishonesty.

After trial, the jury returned a special verdict in favor of the defendants, finding that the plaintiff did not sustain his injuries in the manner he alleged.

*The plaintiff's appeal.* The plaintiff first argues that it was error for the trial judge to allow the defendants to argue that the plaintiff did not fall into a hole as he alleged. The plaintiff claims that this was tantamount to allowing the defendants to argue fraud to the jury without first raising it as an affirmative defense in their pleadings, as required by Mass.R.Civ.P. 8, 365 Mass. 749 (1974).

The plaintiff misses the mark in his argument. One essential element of his cause of action was establishing that an accident indeed occurred, injuring him. The defendants denied the allegation,[4] calling upon the plaintiff to prove it. One need not necessarily allege fraud in challenging the credibility of an opponent. If it were otherwise, every answer would require rais-

---

[3]It is unclear why the plaintiff was dropped off at that spot. It did, however, form the basis for the negligence claim against the driver and the cab company on the grounds that the plaintiff was let off on the wrong side of the street and the cab was facing the wrong direction. The cab driver, in his deposition taken prior to his death, indicated that (1) he did not remember the plaintiff and Jones; (2) no one had ever been injured exiting his cab; (3) he had never driven anyone to Somerville Hospital in his taxi; and (4) he had never driven anyone to the Bull Pen Pub in Somerville in his entire twenty-four years as a taxi driver and did not even know where it was located.

[4]The defendants answered that they lacked sufficient knowledge to either deny or admit the allegation. This had the effect of a denial. See Mass.R. Civ.P. 8(b), 365 Mass. 749 (1974).

55 Mass. App. Ct. 542 (2002)                    ₒ                    545

Brillante v. R.W. Granger & Sons, Inc.; Barlite Construction, Inc.

ing that affirmative defense. It was entirely appropriate on cross-examination to attack the credibility of the plaintiff and his witness with inconsistencies in their testimony and their numerous prior criminal convictions,[5] pursuant to G. L. c. 233, § 21. The defendants here were not required to plead fraud in order to challenge the witnesses' credibility as to whether the event occurred as alleged. This is not what Mass.R.Civ.P. 8(c) was intended to encompass.[6]

Further, the judge exercised her discretion appropriately in allowing the defendants to impeach the plaintiff and Jones with their prior criminal convictions. The plaintiff contends that the probative value of the evidence, even if relevant, was so prejudicial that it should have been excluded.

"One who has been convicted of crime is presumed to be less worthy of belief than one who has not been so convicted." *Labrie* v. *Midwood*, 273 Mass. 578, 582 (1931). "If a prior conviction is within the prescribed time limits of G. L. c. 233, § 21, '[t]he decision whether to admit evidence of prior convictions to impeach a witness involves an exercise of discretion by the judge.' " *Commonwealth* v. *Leftwich*, 430 Mass. 865, 869 (2000), quoting from *Commonwealth* v. *Fano*, 400 Mass. 296, 302 (1987).

The convictions of the plaintiff and Jones were relevant to the central issue of their credibility as witnesses. The judge carefully weighed the probative value of the convictions in ruling on the motion in limine concerning their admittance. The trial judge properly instructed the jury to consider the convic-

---

[5]The plaintiff had been convicted of possession of $9,520 in counterfeit bills; possession of cocaine; larceny of property over $250; operating under the influence of alcohol; and being a disorderly person. Jones had more than twenty convictions, including larceny of property over $250, larceny of a motor vehicle, multiple counts of larceny by check, possession of cocaine, operating a motor vehicle under the influence of alcohol, operating a motor vehicle with a suspended license, operating an uninsured or unregistered motor vehicle, and giving a false name and address to the police.

[6]For a discussion of rule 8(c), see Smith & Zobel, Rules Practice, §§ 8.15, 9.2-9.5 (1974 & Supp. 2002).

546 55 Mass. App. Ct. 542 (2002)

Brillante *v.* R.W. Granger & Sons, Inc.; Barlite Construction, Inc.

tions only in assessing the witnesses' credibility. There was no abuse of discretion.[7]

*Granger's appeal.* In response to the plaintiff's lawsuit, Granger filed claims against subcontractors Antico and Barlite for contribution, indemnification and for breach of contract, claiming that the subcontractors breached their subcontracts by failing to name Granger as an additional insured in their insurance contracts relating to the construction project. Granger claimed that if they had done so, the insurance companies of Antico and Barlite would have been required to defend the plaintiff's suit against Granger. Because Barlite's and Antico's subcontracts are identical, we consider them together. See note 9, *infra.*

Article 11.1.1 of the Granger-Somerville contract required Granger to obtain liability insurance and name the city as an additional insured, and stated that Granger could not allow any subcontractor to begin work until the required insurance had been obtained.[8]

In turn, article 4.3 of the Granger-Barlite subcontract provided that Barlite would assume towards Granger all the obligations Granger assumed towards the city of Somerville in the primary

---

[7]The plaintiff makes two further arguments on appeal. We need not consider his argument that the trial judge erred in her jury instruction regarding the burden of proof as to whether the accident occurred, as the issue was not properly preserved, counsel having failed to object. See Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974).

The plaintiff also argues that the trial judge erred by requiring the jury first to answer the question "[D]id the plaintiff Mr. Brillante fall in a trench or hole at the parking garage construction site on the corner of Holland Street and Buena Vista Road on March 25, 1990?" As earlier stated, the plaintiff was required to prove, by a preponderance of the evidence, that the defendants' negligence caused his injuries; the very occurrence of the incident goes to the necessary element of negligent conduct by the defendants. See *Srebnick* v. *Lo-Law Transit Mgmt., Inc.,* 29 Mass. App. Ct. 45, 47 (1990). There was no error.

[8]Article 11.1.1 of the contract states, "Contractor shall not commence work under this Contract until he has obtained all insurance required herein nor until such insurance has been approved by the Owner. Contractor shall not allow any Subcontractor to commence work until the insurance required of the Subcontractor has been so obtained and approved. Insurance shall be written by insurance companies acceptable to the Owner."

55 Mass. App. Ct. 542 (2002)                    547

Brillante *v.* R.W. Granger & Sons, Inc.; Barlite Construction, Inc.

contract.[9] Notwithstanding article 4.3, article 5 of the subcontract specifically detailed the insurance Barlite was required to obtain prior to commencing performance. Article 5.1 provided that Barlite was required to file certificates of insurance with Granger prior to starting work on the project, demonstrating that Barlite had the required insurance.[10] Barlite was also required, under article 5.2, to indemnify Granger, the city of Somerville, and the architect for all claims and expenses "arising out of or resulting from the performance or failure of performance of" the work, and Barlite was required to obtain insurance to cover this indemnity obligation as well.[11]

There was no express requirement in the subcontract that Barlite name Granger as an additional insured. Granger argues that article 4.3 of the subcontract, the clause incorporating the

[9]Article 4.3 of the Granger-Barlite subcontract states, "The Trade Contractor [Barlite] agrees to be bound to and assume toward the Contractor [Granger] all the obligations and responsibilities that the Contractor assumes toward the Owner [city of Somerville]. Contract documents are available, at reasonable times, at the office of the Contractor for purposes of examination." (The applicable section of the Antico subcontract was omitted from the record appendix. The parties, however, acknowledged that the subcontracts were identical, and Antico in its brief quotes a provision identical to this quotation.)

[10]Article 5.1 of the Granger-Barlite subcontract states, "The Trade Contractor [Barlite] agrees to furnish the Contractor [Granger] with certificates of insurance from an insurance company (or other source) certifying that the Trade Contractor is protected on the work with worker's compensation and employer's liability, public liability and bodily injury, property damage insurance, and any other insurance as required by the contract documents. The Trade Contractor will not be permitted to start work at the site until these certificates are filed with the Contractor. Compliance by the Trade Contractor with the foregoing requirements, as to carrying insurance and furnishing certificates, shall not relieve the Trade Contractor of its liabilities and obligations."

[11]Article 5.2 of the Granger-Barlite subcontract states, "To the fullest extent permitted by law, the Trade Contractor [Barlite] agrees to indemnify and hold harmless, the Contractor [Granger], the Owner [city of Somerville], the Architect/Engineer, and all of their agents and employees from and against any and all claims, damages, costs, liabilities, judgments, negligence, losses and expenses, including but not limited to attorney's fees arising out of or resulting from the performance or failure of performance of the Trade Contractor's work under this agreement. Such obligations shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this paragraph. Trade Contractor shall procure all insurance necessary to cover its obligations under this provision."

548    55 Mass. App. Ct. 542 (2002)

Brillante v. R.W. Granger & Sons, Inc.; Barlite Construction, Inc.

terms of its contract with the city of Somerville, mandates such a requirement. Barlite obtained the insurance required under article 5 of the subcontract, but did not obtain any policy naming Granger as an additional insured.

The interpretation of a written contract is a question of law. See *Roberts Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973); *Hastings Assocs., Inc.* v. *Local 369 Bldg. Fund, Inc.*, 42 Mass. App. Ct. 162, 172 (1997). In interpreting a contract, the court must "give effect to the parties' intentions and construe the language to give it reasonable meaning wherever possible." *Baybank Middlesex* v. *1200 Beacon Properties, Inc.*, 760 F. Supp. 957, 963 (D. Mass. 1991). A contract "must also be interpreted as a whole and effect must be given to all of its provisions in order to effectuate its overall purpose." *Ibid.*

We agree with the trial judge that the expansive reading of the subcontract proposed by Granger is incorrect. The insurance requirements of Barlite were expressly and clearly stated in the subcontract. Granger maintains that the subcontract language required Barlite to name Granger as an additional insured.[12] Under Granger's proposed reading, each subcontractor would be responsible for the performance of the entire Granger-Somerville contract and all of its undertakings. Surely this was not what the parties intended the subcontract to mean.[13]

There is further support in the subcontract itself for this view. Article 11.1 of the subcontract states that "Where any provision of the contract documents between the Owner [city of Somerville] and the Contractor [Granger] is inconsistent with any

---

[12]Granger relies in part on *Whittle* v. *Pagani Bros. Constr. Co.*, 383 Mass. 796, 798-800 (1981), to support its argument. However, *Whittle* is distinguishable from the instant case. In *Whittle*, summary judgment was inappropriate on a similar contract where the subcontractor was concurrently negligent, which is not the case here.

[13]We note, as did the trial judge, that, carried to its logical conclusion, the interpretation that either Antico or Barlite was bound to do everything Granger was bound to do in the primary contract leads to absurd results. Such an expansive reading would mean that Antico, a mere subcontractor responsible for site clearing, earth work, cleaning drainage structures, water service and sewer system, was also bound to acquire insurance for blasting damage and insurance for the value of the completed project. An even more egregious example would have Barlite, pursuant to its $5,732 subcontract, being forced to carry such extensive insurance.

provision of this agreement, this agreement shall govern." By the express terms of the subcontract, the provisions regarding insurance in article 5 of the subcontract displace the conflicting requirements in the contract between Granger and the city of Somerville.

Further, the uncontested fact that Granger allowed the subcontractors to commence work on the project without demonstrating that it had acquired the insurance that Granger now contends was required is illustrative of the parties' understanding of the insurance requirements of the subcontract.[14] See *Bowser* v. *Chalifour*, 334 Mass. 348, 352 (1956) ("Contracts should be construed in accordance with justice and common sense and the probable intention of the parties"); *Shea* v. *Bay State Gas Co.*, 383 Mass. 218, 224-225 (1981).

"[T]he parties were two business entities experienced in negotiating contracts." *Massachusetts Port Authy.* v. *Johnson Controls, Inc.*, 54 Mass. App. Ct. 541, 544 (2002). If they intended to have such expansive insurance coverage, they easily could have so provided in their contract.[15]

*Judgments affirmed.*

---

[14]As further evidence of the understanding of the parties at the time, we quote from the judge's memorandum of decision: "When [the plaintiff's] claim first surfaced, Granger made demand on Antico and Barlite only for indemnification and contribution as called for under Article 5.2. It did not claim any entitlement as an 'additional name insured' on the subcontractors' own policies until three or four years later. The tortured reading that Granger now seeks to place on the subcontract insurance requirements is a litigation afterthought that does not comport with the parties' understanding of those requirements at the time."

[15]Given our analysis, we need not address the applicability of G. L. c. 149, § 29C. Compare *Miley* v. *Johnson & Johnson Orthopaedics, Inc.*, 41 Mass. App. Ct. 30, 32-33 (1996).