Borenstein, Isaac, J.
I. INTRODUCTION
Black Rock Capital, LLC (“Black Rock”), a commercial finance company, brought this action pursuant to G.L.c. 251, §2(b), against Attorney Richard W. Gannett (“Attorney Gannett”), its former attorney, in order to stay arbitration proceedings that Attorney Gannett initiated with respect to fee disputes related to his representation of Black Rock. Black Rock alleges that it had only one fee agreement with Attorney Gannett that provided for arbitration in the event of a fee dispute, and that any arbitration between the parties should be limited to any dispute arising out of that fee agreement. Upon Black Rock’s filing of its complaint seeking a stay, this court (Borenstein, J.) stayed the arbitration proceedings until the hearing on this matter in the Superior Court. A hearing was held on October 25, 2005, at which time, this court (Borenstein, J.) took the matter under advisement. For the following reasons, Black Rock’s motion to stay arbitration is ALLOWED as to all but one of the parties’ fee disputes.
II. BACKGROUND
As Attorney Gannett did not file an answer, the following background is taken from Black Rock’s complaint and attachments and its Motion to Dismiss Defendant’s Demand for Arbitration that does not appear to have been docketed in this case.[1]
In fall 2003, Black Rock and Attorney Gannett entered into an attorney-client relationship. The first matter in which Attorney Gannett represented Black Rock was Black Rock Capital LLC v. ATS Cargo, LLC et al., Civil No. 2004-00230 (Middlesex Super.Ct.) (“Atlas Action”). Black Rock and Attorney Gannett entered into a Contingency Fee Agreement (“Contin *650 gency Agreement”), dated October 22, 2003, that “[wa]s written to set forth the nature of [Attorney Gannett’s] representation of Black Rock ... in pursuit of its claims against ATS Cargo, LLC, [and others].” Pursuant to the Contingency Agreement, Black Rock agreed to pay all of Black Rock’s expenses and out-of-pocket disbursements and to provide Attorney Gannett with 25% of any recovery it obtained.
Thereafter, Attorney Gannett represented Black Rock in S&J Exco, Inc. v. Black Rock Capital, LLC, Civil No. 2004-321-A (Barnstable Super.Ct.) (“S&JAction”). On June 28, 2004, Black Rock and Attorney Gannett entered into a Legal Services Fee Agreement (“Fee Agreement”) pursuant to which Black Rock agreed to retain Attorney Gannett “in connection with a claim for civil damages an accounting arising from and in connection with a certain loan that occurred in September 2002 by and between Black Rock . . . and an entity known as, S&J Exco, Inc. .. . and, more particularly, a lawsuit docketed as Civil Action Number 2004-321-A now pending in the Barnstable Superior Court in the Commonwealth of Massachusetts.” In the Fee Agreement, Black Rock agreed to pay Attorney Gannett an initial payment of $3,500 and, subsequently, “$200.00 per hour for legal services rendered by the attorney, $150.00 per hour for legal services rendered by the attorney’s associates, and $100.00 per hour for legal services rendered by paralegals and law clerks.” Additionally, Black Rock and Attorney Gannett agreed that
[a]ny disputes by any party to this legal services fee agreement shall be submitted to binding arbitration at the American Arbitration Association Boston, Massachusetts. Further, each party to this legal services agreement agrees to waive any right or claim to a trial by jury. Each party agrees that the law of the Commonwealth of Massachusetts controls the interpretation of this legal services fee agreement.
Attorney Gannett also represented Black Rock in the matter of Black Rock Capital, LLC v. Donaruma, Civil No. 04-4058 (Suffolk Super.Ct.) (“Donaruma Action”), and in the Shepco Action.[2] The parties did not enter into written agreements with respect to these two matters.
In January 2005, Black Rock terminated its relationship with Attorney Gannett. In a letter dated January 14, 2005, Attorney Gannett wrote to Black Rock that a balance of $10,426.29 remained unpaid, and he set forth the following breakdown of the amount: $6,213.20 on the Atlas Action; $763.59 on the S&J Action; $3,329.50 on the Donaruma Action; and $120 on the Shepco Action.
On May 16, 2005, Attorney Gannett filed with the American Arbitration Association (“AAA”) a form on which he made his Demand for Arbitration (“Demand”) against Black Rock for $12,216.29 in “Unpaid professional fees[.]” In his Demand, Attorney Gannett indicated that he was “a parly to an arbitration agreement contained in a written contract dated June 28, 2004 providing for arbitration under the Commercial Arbitration Rules of the [AAA] . . .”[3]
In a June 16, 2005, letter to the AAA in Providence, Rhode Island, Attorney Gannett wrote that the “Arbitration Clause [in the Fee Agreement] is an additional consistent term concerning any dispute concerning fees and was adopted as such by the parties.”[4] He further wrote that Black Rock “adopted the propriety of the fees in the [Atlas Action] by requesting a Superior Court judge by means of a motion for assessment of damages to order payment of the fees in question from” the opposing party in that action. Finally, Attorney Gannett wrote that, “with reference to the Donaruma matter Atty. Goldstein, legal advisor for Black Rock, admitted that fees were owed.”[5]
The arbitrator, Robert V. Deiana (“Deiana”) held a preliminary hearing on September 8, 2005, and set the scheduling order; Deiana specifically set October 18, 2005, as the date on which hearings before him were to commence. On September 21, 2005, Black Rock filed its motion to dismiss Attorney Gannett’s demand for arbitration, arguing that the June 28, 2004, Fee Agreement out of which Attorney Gannett alleged his right to arbitration arose, only concerned disputes over the S&J Action. Black Rock therefore claimed that the parties’ disputes over the fees due Attorney Gannett with respect to the other three actions were not arbitrable. In a letter dated October 7, 2005, and addressed to the AAA in East Providence, Rhode Island, Deiana indicated that he had denied Black Rock’s motion to dismiss; he offered no explanation.
Black Rock filed its complaint in this matter with the Superior Court on October 11, 2005, asking this court to stay the arbitration proceedings pending a determination of the scope of those arbitration proceedings or, alternatively, that the court issue an order allowing the arbitration to proceed with respect to legal fees allegedly due in the S&J Action only.
III. DISCUSSION
“In Massachusetts, the question whether the parties have agreed to arbitrate a dispute may be raised either prior to or during the arbitration proceedings by way of an application in the Superior Court. G.L.c. 251, §2(b).” Parekh Constr. v. Pitt Constr. Corp., 31 Mass.App.Ct. 354, 358 (1991); see G.L.c. 251, § 12(a)(5) (allowing party to challenge arbitration agreement after arbitrator made award if “there was no arbitration agreement and the issue was not adversely determined in proceedings under section two [of G.L.c. 251] and the party did not participate in the arbitration hearing without raising the objection”). Black Rock has brought this action pursuant to G.L.c. 251, §2(b), which provides that,
[u]pon application, the superior court may stay an arbitration proceeding commenced or threatened if it finds that there is no agreement to arbitrate. Such *651 an issue when in substantial and bona fide dispute, shall be forthwith and summarily determined, and if the court finds for the applicant it shall order a stay of arbitration; otherwise, the court shall order the parties to proceed to arbitration.
(Emphasis added.)
The arbitration clause at issue appears in the Fee Agreement and requires that “[a]ny disputes by any party to this legal services fee agreement shall be submitted to binding arbitration at the [AAA] . . . Further, each parly to this legal services agreement agrees to waive any right or claim to a trial by jury.” (Emphases added.) Black Rock argues that this arbitration clause applies only to fee disputes related to the S&J Action. Conversely, Attorney Gannett contends that this arbitration clause “is an additional consistent term concerning any dispute concerning fees and was adopted as such by the parties.” (Emphasis added.)
In Local No. 1710, Int’l Ass’n of Fire Fighters v. Chicopee, 430 Mass. 417 (1999), the Supreme Judicial Court (“SJC”) “enumerated the ‘guiding principles’ applicable to cases involving contested arbitration proceedings, as set forth in the decisions of the United States Supreme Court interpreting Federal labor law.” Massachusetts Highway Dep’t v. Perini Corp., 444 Mass. 366, 374 (2005), quoting 430 Mass. at 420.[6] “These principles seek a balance between the statutory policy favoring arbitration as an expeditious and efficient means for resolving disputes and the courts’ role as the guardian of the parties’ right to submit to arbitration only those disputes that the parties intended.” Id., citing Home Gas Corp. of Mass. v. Walter’s of Hadley, Inc., 403 Mass. 772, 774 (1989). These four principles are:
that “arbitration is a matter of contract and a party cannot be required to submit to arbitration of any dispute which he has not agreed so to submit”!;] that the question whether an agreement creates a duty to arbitrate is “undeniably an issue for judicial determination . . . [u]nless the parties clearly and unmistakably provide otherwise”];] . . . that, “in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims . . . [including] determining whether there is particular language in the written instrument which will support the claim”[;]... [and 4] that, where the contract contains an arbitration clause, there is a presumption of arbitrabilty in the sense that “[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. Such a presumption is particularly applicable where the clause is . . . broad[.]”
Local No. 1710, Int'l Ass’n of Fire Fighters, 430 Mass. at 420-21 (emphasis in original) (some alterations and ellipses in original).
Here, the dispute concerns whether the Fee Agreement’s arbitration clause is limited to the S&J Action itself or whether it applies to all of the disputes between Black Rock and Attorney Gannett. See id. at 422 (“A broad arbitration clause . . . essentially states that ‘all disputes’ regarding the agreement are subject to arbitration”). Consistent with the first principle, “[w]hether a particular agreement calls for arbitration is to be determined by applying general principles of contract law.” Mugnano-Bornstein v. Crowell, 42 Mass.App.Ct. 347, 350 (1997). “The present rule of construction recognizes that ‘[c]ontract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties’ intention.’ ” Shea v. Bay State Gas Co., 383 Mass. 218, 222-23 (1981) (quotation omitted) (alteration in original). The court must “therefore ‘construe the contract with reference to the situation of the parties when they made it and to the objects sought to be accomplished.’ ” Id. at 223, quoting Bryne v. Gloucester, 297 Mass. 156, 158 (1937); see USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116 (1929) (“The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose”).
Additionally, “the scope of a parly’s obligations cannot ‘be delineated by isolating words and interpreting them as though they stood alone . . . Not only must due weight be accorded to the immediate context, but no part of the contract is to be disregarded.’ ” Starr v. Fordham, 420 Mass. 178, 190 (1995) (internal citation omitted), quoting Boston Elevated Ry. v. Metropolitan Transit Auth., 323 Mass. 562, 569 (1949). Arguably, the arbitration clause, viewed alone, applies generally to any disputes between Black Rock and Attorney Gannett. The introduction to the Fee Agreement, however, places a limitation on the parties’ obligations. In that opening paragraph, the Fee Agreement indicates that Black Rock retained Attorney Gannett “in connection with a claim for civil damages and an accounting arising from and in connection with a certain loan that occurred in September 2002 by and between Black Rock . .. and an entity known as, S&J Exco, Inc . . . and, more particularly, a lawsuit docketed as Civil Action Number 2004-321-A now pending ...” Therefore the parties’ obligations can arise only out of the S&J Action, at least insofar as the Fee Agreement is concerned.
By expressly referring to Black Rock’s retention of Attorney Gannett in connection with the S&J Action, the parties cannot have intended the provisions of the Fee Agreement to extend beyond Attorney Gannett’s representation of Black Rock in that case. See Brillante *652 v. R.W. Granger & Sons, 55 Mass.App.Ct. 542, 548 (2002) (“A contract ‘must... be interpreted as a whole and effect must be given to all of its provisions in order to effectuate its overall purpose’ ”). Accordingly, the only arbitrable dispute between Black Rock and Attorney Gannett is that arising out of the S&J Action.[7] The parties have no written agreement to arbitrate the Atlas Action, the Donaruma Action, or the Shepco Action.[8] As one “cannot be required to submit to arbitration any dispute which he has not agreed . . . to submit!,]” arbitration as to all but the S&J Action must be stayed pursuant to G.L.c. 251, §2(b). Mugnano-Bornstein, 42 Mass.App.Ct. at 350.
IV. ORDER
For the foregoing reasons, Black Rock’s motion to stay arbitration pursuant to G.L.c. 251, §2(b) is ALLOWED as to all of the parties’ disputes except for those arising out of the Attorney Gannett’s representation of Black Rock in S&J Exco, Inc. v. Black Rock Capital, LLC Civil No. 2004-321-A (Barnstable Super. Ct.).

 Paper #3 is a “memorandum for Superior Court argument on request for stay” but it appears to be a paper initially filed with the American Arbitration Association on September 21, 2005. A handwritten note on a post-it affixed to this memorandum indicates that the memorandum is “for informative purposes” and that it is “[t]o be filed as a memo for Supenor Court argument on request for stay.” It seems that Black Rock’s motion to dismiss with this Supenor Court case caption is merely a reformatting of its American Arbitration Association motion.

 Black Rock does not give a full case name for Shepco, and it states that this case “was never commenced as a separate civil lawsuit and for that reason no civil docket number exists to identify this case.” Motion to Dismiss, at pp. 2-3.

 All Attorney Gannett did was fill in the “June 28, 2004" date on the line provided on the Demand form; the rest of the quoted text is pre-printed on the Demand form.

 This letter is Exhibit 4 to Paper No. 3, Black Rock’s original motion to dismiss filed with the AAA.

 Attorney Gannett noted that enclosed with his letter was his “response to Atty. Katz’ letter dated June 9, 2005.” Black Rock has not submitted Attorney Gannett’s response or Attorney Katz’ initial letter. That notwithstanding, Black Rock does not comment on Attorney Gannett’s letter beyond challenging Attorney Gannett’s legal conclusion that the arbitration clause in the Fee Agreement applies to his representation of Black Rock as a whole.

 Massachusetts Highway Department abrogated Local No. 1710, Int'l Ass 'n of Fire Fighters insofar as the latter case held “that, in the context of an expressly limited arbitration clause in a labor agreement between a union and a city, a judge should decide whether the agreement allowed the arbitrator to interpret the agreement’s timeliness requirements for grievances.” 444 Mass. at 376 n.11, citing 430 Mass. at 429. The law set forth in Local No. 1710, Int'l Ass'n of Fire Fighters concerning arbitration in general otherwise remains good law.

 As noted above, Attorney Gannett indicated on the Demand form he filed with the AAA that the parties’ agreement to arbitrate their dispute over his unpaid fees arose out of the June 28, 2004 Fee Agreement. This statement is incorrect because, as established above, the only fees with which the Fee Agreement is concerned are those resulting from the S&J Action. Therefore, the amount Attorney Gannett filled in on the Demand form as the relief sought, $12,216.29, is also incorrect; according to his January 14, 2005, letter to Black Rock, the outstanding balance in the S&J Action is $763.59.

 The Contingency Agreement, entered into almost a year before the Fee Agreement, similarly limits its application to the Atlas Action only, indicating in the opening paragraph that it “[wa]s written to set forth the nature of [Attorney Gannett’s] representation of Black Rock ... in pursuit of its claims against ATS Cargo, LLC,” and others. The Contingency Agreement does not contain an arbitration clause, therefore the parties cannot arbitrate any disputes arising out of the Atlas Action. The parties did not enter into written agreements with respect to either the Donaruma Action or the Shepco Actions, thus the parties are similarly precluded from arbitrating disputes arising out of those cases. See G.L.c. 251, §1 (“A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid, enforceable and irrevocable ...”); Commerce & Indus. Ins. v. Bayer Corp., 433 Mass. 388, 397 (2001) (acknowledging requirement of G.L.c. 251, §1, that arbitration agreement be in writing).