Billings, Thomas P., J.
On August 27, 20071 heard oral argument on three pending motions for summary judgment. My decisions on those motions, and the reasons therefor, are as follows.

1. Defendant Assabet Construction Services, Inc.’s Motion for Summary Judgment (Paper #38).

This motion is DENIED.
There is evidence from which a jury could find that both the owner and Assabet — which had some overlap in ownership and management — held Assabet out as the general contractor on the project, and that the plaintiffs employer (see below) viewed Assabet’s President, Kevin O’Malley, as someone from whom it would accept direction as to the details of its work. There is thus a genuine issue of material fact as to whether Assabet had the duties imposed on a general contractor by 454 CMR 10.00 and 29 CFR Part 1926, and/or under the rule of Corsetti v. Stone Co., 396 Mass. 1, 10 (1985).

2. Defendant, Barnes Buildings & Management Group, Inc. ’s Motion for Summary Judgment (Paper #37).

This motion is ALLOWED.
It is undisputed that Barnes Buildings & Management Group, Inc. (“Barnes”) held the contract to erect the structural steel on the project. Plaintiff s decedent, Scott Callender, was an ironworker who died in a fall *99 from a beam while at work on the project. The issue presented by the motion is whether Barnes — whose workers’ compensation insurer paid the Callender estate’s claim in the Division of Industrial Accidents— is entitled to the immunity conferred by G.L.c. 152, §§23 and/or 24.
What would seem, on the facts just recited, asimple question is confounded somewhat by the facts that Barnes’ owner, Martin E. Barnes, III, also operates an affiliate called B.H. Constructors, Inc. (“B.H.”); both companies were insured under a single workers’ compensation policy; there is some evidence suggesting that B.H., not Barnes, was Scott Callender’s employer (for example, his paychecks were cut by B.H.);[1] and it may have been B.H. that made the initial First Report of Injury — dated June 10, 2003, signed by Martin Barnes, and stamped in at the DIA the next day calling itself Callender’s “Employer” on the report form.[2]
There is, however, another First report of Injury— made by telephone by a Lee Russo and dated June 10, 2003 but bearing a DIA receipt stamp of June 27, 2003 — in which Barnes is named as the Employer. For whatever reason, it seems that the DIA case proceeded on the assumption, on all sides, that Barnes, not B.H., was Callender’s employer. The Employee’s claim, completed by comp, counsel (Mr. Mulholland), names Barnes as the employer, as do Mulholland’s correspondence, the Agreement to Pay Compensation (signed by the insurer, Mulholland, and Mrs. Callen-der), and the Insurer’s Notification of Payment. The paperwork, at least, is thus clear that the insurer paid workers’ compensation benefits to Mrs. Callender on behalf of Barnes.
In these circumstances, the insurer may not have had much reason to care which insured appeared on the paperwork. Affidavits from Mr. Mulholland and Mrs. Calender confirm that the issue of who Mr. Callender’s employer had been was never raised, addressed, litigated, controverted, or even mentioned in the DIA proceeding.
Viewed simply in terms of the evidence and the reasonable inferences to be drawn (in the non-moving parly’s favor) therefrom, there is a genuine issue of material fact concerning which entity — Barnes or B.H. — was Scott Callender’s employer. Barnes argues, however, that this issue — and the consequent immunity from suit under Chapter 152 — are concluded in its favor as a matter of law, both under sections 23 and 24 of that Chapter, and under the doctrine of judicial estoppel.
I agree with Barnes that it is immune under section 23. That section provides, in pertinent part, as follows.
If an employee accepts payment of compensation under this chapter on account of personal injury or makes an agreement under section forty-eight, such action shall constitute a release to the insured of all claims or demands at common law, if any, arising from the injury.
The plaintiff contends that section 23 will not bar a recovery against Barnes, provided she can show that B.H., not Barnes, was in fact her employer. Such a result would be contrary to the plain language of the statute and to the appellate caselaw interpreting it. An “employee” is a “person in the service of another under any contract of hire, express or implied, oral or written,” with certain exceptions not here relevant. G.L.c. 152, §1. An “insured” is “an employer who has provided by insurance for the payment to his employees by an insurer of [workers’ compensation] benefits . . . or is a self-insurer . . .” Id. Scott Callender was plainly an employee (of someone), and Barnes an employer (of someone), according to these definitions.
There are circumstances in which workers’ compensation benefits are paid by the carrier of an entity that was not, or was not indisputably, the claimant’s direct employer. Appellate cases considering the application of section 23 to such facts have held that the insured whose carrier pays the benefits is entitled to the statutory release of claims. See Kniskern v. Melkonian, 68 Mass.App.Ct. 461 (2007) (defendant whose carrier settled DIA case and paid benefits was released, even though defendant had contended in the DIA, and there was evidence, that plaintiff was an independent contractor rather than an employee, and even where parties purported in DIA settlement papers to reserve plaintiffs tort claim against the defendant); Russell v. Donnell, 60 Mass.App.Ct. 1126 (2004) (Rule 1:28 decision) (employee of uninsured sub-subcontractor was barred from suing sub-contractor whose carrier had paid benefits under c. 152, §18).
At least one carefully reasoned decision by a respected colleague has come out the other way. Larson v. Fred Salvucci Corp., 2004 WL 2070894 (Mass.Super. 2004; Gants, J.) [18 Mass. L. Rptr. 247] (employee of uninsured sub-subcontractor was not barred from suing sub-contractor whose carrier had paid benefits under c. 152, §18). It bears noting, however, that the Larson decision did not cite the slightly earlier, unpublished Russell case, and that it predated Kniskern.[3]
I bow, as I should and must, to the holdings of the Appeals Court. Those holdings aim to respect “the Legislature’s careful balancing of the competing interests of workers and employers,” Russell, to which judgment I must also defer. Barnes is therefore entitled to summary judgment on the ground that it is immune under c. 152, §23.

3. Defendant, Barnes Buildings & Management Group, Inc. ’s

Motion for Summary Judgment on the Cross Claim ofCSH Realty Corp. (Paper #36).

This motion is ALLOWED.
The motion is addressed to the four-count cross claim asserted against Barnes by CSH Realty Corp., *100 the project owner. The cross claim pleads claims for contribution, breach of contract, negligence, and express and/or implied contractual indemnity. They are considered here, for reasons of convenience, slightly out of order.

A.Contribution.

The contribution claim depends on the assertion that CSH and Barnes are “jointly liable in tort [to the Callender estate] for the same injury .. .” G.L.c. 23IB, §l(a). It fails because Barnes, being immune under c. 152, §23 (see above), is not liable to the estate, and therefore cannot be liable for contribution. Liberty Mutual Ins. Co. v. Westerlind, 374 Mass. 524, 526 (1978).

B.Indemnity.

The workers’ compensation bar would not preclude a third-party tortfeasor from enforcing any contractual rights of indemnity it had against the insured employer. Spellman v. Shawmut Woodworking & Supply, Inc., 445 Mass. 675, 679-80 (2006). CSH’s cross claim pleads both an express and an implied contractual right of indemnity.
The former is a non-starter. Unlike many construction contracts, the contract between CSH and Barnes contains no express indemnity clause. The written contract consists of a three-page Proposal, faxed (in a revised version) on November 19, 2002 by Barnes to CSH, on which CSH endorsed its acceptance on December 2, 2002. Indemnity is nowhere mentioned or hinted at in the document; nor did the subject arise in the parties’ oral discussions.
CSH nonetheless asserts that an indemnity obligation should be implied from the written contract, the parties’ discussions, and their relationship. The best one can say for this claim comes from Michael O’Malley, CSH’s principal. He testified that he “would have assumed” that Barnes would indemnify CSH for workplace accidents “[b]ecause you’re responsible for your men when you’re on a job.” He also believed— based on the proposal’s provision that Barnes would carry general liability and workers’ compensation coverage and on Marty Barnes’ promise to provide him a certificate of insurance — ”[t]hat I would be covered for anything that his guys did."
The SJC has several times “assume[d],” without deciding, that a third-party tortfeasor might have an implied right of contractual indemnity against an insured employer, each time declining to find such a right on the facts before it. See Larkin v. Ralph O. Porter, Inc., 405 Mass. 179, 181-82 (1989); Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 37 (1983); New Bedford Gas & Edison Light Co. v. Maritime Terminal, Inc., 380 Mass. 734, 735-36 (1980); Liberty Mutual v. Westerlind 374 Mass. at 526-52. Even supposing that implied indemnity claims of this nature may be countenanced without unduly upsetting the legislative compromises embedded in Chapter 152,
[s]uch a right will be implied only in two circumstances. First, when “ ‘there are unique special factors’ demonstrating that the parties intended that the putative indemnitor bear the ultimate liability,” or second, “when there is a generally recognized special relationship between the parties.”
Fireside Motors, Inc. v. Nissan Motors Corp. in U.S.A., 395 Mass. 366, 375 (1985) (citations omitted).
There was no implied contract of indemnity here. O’Malley’s unilateral assumption that Barnes would indemnify CSH was based on circumstances and language that were no more consistent with an indemnity-obligation than with the absence of such an obligation. In particular, Barnes’ commitment to carry general liability insurance protected CSH directly, in the event that Barnes negligently damaged property of CSH. Its commitment to carry workers’ compensation insurance protected CSH from liability to Barnes employees under G.L.c. 152, §18. A certificate of insurance would assure CSH that it had these protections. It is unnecessary, in other words, to assume a sub silentio promise of indemnity for Barnes’ written and oral promises to make sense; those promises stand perfectly well on their own, without embellishment.
Nor is an indemnity obligation appropriately implied from the parties’ relationship. CSH and Barnes were the owner and contractor, respectively, on a construction project. As the owner, CSH had independent obligations regarding jobsite safety, see 454 CMR 10.03(b); its liability (if it has any) to the Callender estate is not derivative of Barnes, but arises from its breach (if there was one) of its own duty of care. There is thus no “special relationship” between Barnes and CSH on which to base an implied indemnity obligation. See Decker, 389 Mass. at 40-41. For all of these reasons, Barnes is entitled to summary judgment on the indemnity claim.

C.Breach of Contract.

The breach of contract claim proceeds from CSH’s assertion that Barnes agreed, but then neglected, to have CSH added as an additional insured on its general liability policy.[4] As with the indemnity claim, the problem is a dearth of evidence that there was any such agreement; i.e., a meeting of the minds in which Barnes made, and CSH accepted, a commitment that CSH would be added as an additional insured.
According to Michael O’Malley, Mr. Barnes promised (when they were discussing the Purchase Order’s commitment that Barnes would carry general liability and workers’ compensation insurance) that he would supply a certificate of insurance, but did not state that the certificate would show Barnes as an additional insured. At no time did anyone from Barnes promise CSH that it would be carried as an additional insured on Barnes’ liability policy. A contract provision that requires the contractor to carry liability insurance does not mean that the owner will be listed as an *101 additional insured, unless the contract expressly so provides. See Brillante v. R.W. Granger & Sons, Inc., 55 Mass.App.Ct. 542, 547-48 (2002).
There was, in short, no such contract as CSH alleges, meaning that Barnes is entitled to summary judgment on Count II of the cross claim.

D. Negligence.

The cross claim asserts that Barnes was negligent in failing to have CSH listed as an additional insured on its liability policy. It points to the facts that Barnes orally promised CSH a certificate of insurance; that it had a valid additional insured endorsement to its liability policy; but it did not request of the carrier that CSH be so listed (inferentially, because it forgot).
The first prerequisite of a negligence claim is a duty of care. CSH does not appear to assert that there is an industry standard requiring that owners be listed as additional insureds and I notice, judicially, that some are, see Suffolk Construction Co. v. Lanco Scaffolding Co., 47 Mass.App.Ct. 726, 728 & n.4 (1999), and some aren’t. See Brillante.
A duty of care may, however, arise out of a contractual obligation: “When a party binds himself by contract to do a work or to perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it.” Abrams v. Factory Mut. Liab. Ins. Co., 298 Mass. 141, 143 (1937). “(N)egligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage, is a tort.” Id. at 144.
It goes (almost) without saying, however, that the duty to perform a contract carefully cannot mean a duty to do something that the contract does not require. Because Barnes had no contractual duty to secure for CSH the status of an additional insured (see preceding section), it had no tort duty to use reasonable care in doing so.
Nor is the claim appropriately viewed as one for negligent misrepresentation, a theory first advanced in CSH’s opposition to Barnes’ summary judgment motion. Apart from the fact that the claim was not pleaded that way,[5] the evidence concerning Barnes’ communications to CSH on the subject of insurance, detailed above, would not support a finding that Barnes made a misrepresentation, or that CSH reasonably relied on it to its detriment. Barnes therefore gets summary judgment on the negligence claim as well.

ORDER

For the foregoing reasons:
1.Defendant, Assabet Construction Services, Inc.’s Motion for Summary Judgment (Paper #38) is DENIED.
2. Defendant, Barnes Buildings & Management Group, Inc.’s Motion for Summary Judgment (Paper #37) is ALLOWED.
3. Defendant, Barnes Buildings & Management Group, Inc.’s Motion for Summary Judgment On The Cross-Claim of CSH Realty Corp. (Paper #36) is ALLOWED.

There is also record evidence that B.H. was, by the time of the accident, simply the payroll arm of Barnes, which had the right to direct and control Scott Callender’s work.

his form is consistent in this respect with First Report forms submitted for accidents involving other employees. These name B.H. as the employer.

ile other cases on which the plaintiff relies do not help her. In Gurry v. Cumberland Farms, Inc., 406 Mass. 615 (1990), the plaintiffs decedent had not received benefits under Chapter 152, so section 23 was not in play, and genuine issues of material fact concerning the identity of the plaintiffs employer precluded summary judgment as to immunity under section 24. In Searcy v. Paul 20 Mass.App.Ct. 134 (1985), the court rejected a building owner’s argument that because its President and sole shareholder was also the President and sole shareholder of the company that employed, and paid benefits to, the plaintiff, it was immune from suit; there was no contention that the benefits were paid by the building owner’s insurer or on his behalf. And in Spinney v. Prudential Ins. Co. of America, 2000 WL 1473470 (Mass.Super. 2000; Smith, J.), the court rejected the claim of a building owner that it was immune, under Chapter 152, from suit by an employee of its property management firm, because the property manager's comp, carrier had paid benefits to the employee.

For a general discussion of the effect of such a clause on facts similar to those of this case, see Transamerica Ins. Group v. Turner Const. Co., 33 Mass.App.Ct. 446 (1992).

The operative allegation is in paragraph 21 of the cross-claim: “The failure of Barnes ... to cause . . . CSH ... to be named as an additional insured under the Barnes ... general liability policy constitutes negligence.” Nothing is said concerning a negligent misrepresentation by Barnes, or reasonable reliance thereon by CSH.