The plaintiff, Richard Fudge, sued the board of trustees of his Chestnut Hill condominium, seeking a declaration that the trustees are responsible for repair or replacement of five large and expensive balcony doors opening into his residential unit. A Superior Court judge granted summary judgment for the trustees. This appeal followed. We affirm.
Background. There are no material facts in dispute and this case presents a purely legal inquiry that we review de novo.[2] See Sullivan v. O'Connor, 81 Mass. App. Ct. 200, 204-205 (2012). The condominium master deed, recorded on December 14, 2008, in the Suffolk County registry of deeds, defines the boundaries of the individual units in the condominium as including "the side of the glass facing the interior of the Unit; such windows and balcony doors (including trim and framing thereof) being part of the Common Elements." The master deed goes on to state that "all exterior windows and doors" are included in the condominium's "Common Elements," and that:
"Except as otherwise specifically set forth in this Master Deed, Declaration of Trust, or Park Board Declaration of Trust, the Common Elements shall be maintained, operated, repaired and replaced as necessary by the Trustees and all costs and expenses thereof shall be assessed among the Unit Owners under the terms of the Declaration of Trust in accordance with each Unit Owner's Percentage Interest"[3] (emphasis added).
The condominium's declaration of trust states that the condominium's bylaws are "incorporated herein by this reference and made a part hereof, with the same force and effect as though fully set forth in the body hereof." Section 17.A. of the bylaws contains the following provision, which is at the crux of the parties' dispute:
"All maintenance and replacement of and repairs to any Unit, ordinary or extraordinary other than to the Common Elements contained therein not necessitated by the negligence, misuse or neglect of such Unit Owner, and to the doors, windows (including, without limitation, replacement of glass) and balcony doors (including, without limitation, replacement of glass), and to electrical, plumbing, and heating fixtures within the Unit or belonging to the Unit Owner that are not a part of the Common Elements, shall be done by the Unit Owner at the Unit Owner's expense, excepting as otherwise specifically provided herein. Each Unit Owner shall be responsible for all damage to any and all other Units and to the Common Elements that such Unit Owner's failure so to do may engender."
Discussion. The motion judge found the above-quoted language to be susceptible to only one meaning, which is that maintenance, replacement, and repair (collectively, repair) of all "balcony doors ... shall be done by the Unit Owner at the Unit Owner's expense." We agree, finding Fudge's alternative constructions to be inconsistent with the plain language of the bylaws and the master deed.
First, Fudge contends § 17.A. means that repairs to "any Unit ... other than ... to the ... balcony doors ... shall be done by the Unit Owner at the Unit Owner's expense." This interpretation ignores that there is a comma after the word "Unit" when that word is first used in § 17.A., that there is no comma between the words "extraordinary" and "other than" which directly follow, and that there is a comma between the words "Unit Owner" (following the words negligence, misuse or neglect") and the word "and." The presence or absence of commas at these junctures indicates that the entire clause "ordinary or extraordinary other than to the Common Elements contained therein not necessitated by the negligence, misuse or neglect of such Unit Owner" modifies the immediately preceding words "any Unit." Accordingly, § 17.A. is readily understood as enumerating three categories of repairs that fall to the unit owners: (1) repairs to any unit, except repairs to common elements contained in the unit unless caused by the unit owner, (2) repairs to the doors, windows, and balcony doors, and (3) repairs to electrical, plumbing, and heating fixtures within a unit or belonging to the unit owner.[4]
Next, Fudge contends that § 17.A. could be read as excluding repair of only "balcony doors ... that are not a part of the Common Elements" from the costs allocated to unit owners. This makes little sense, however, because the master deed defines the balcony doors as part of the common elements, and so the condominium does not contain any balcony doors that are not also part of the common elements.[5] See Sherman v. Employers' Liab. Assur. Corp., 343 Mass. 354, 357 (1961) (giving reasonable meaning to all provisions of a contract is preferable to leaving a part "useless or inexplicable").
A contract provision is not ambiguous if it is susceptible to only one meaning.[6] See Suffolk Constr. Co. v. Lanco Scaffolding Co., 47 Mass. App. Ct. 726, 729 (1999). See also Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 443 (2006), quoting Massachusetts Prop. Ins. Underwriting Ass'n v. Wynn, 60 Mass. App. Ct. 824, 827 (2004) ("difficulty in comprehension does not equate with ambiguity"). Here, we agree with the motion judge that the text allows for only one reasonable interpretation.
Judgment affirmed.

We assume that the five large doors are, in fact, not properly functional. Fudge claims that, even when locked, the doors have swung open on windy days, opening his condominium unit to the elements. He claims that various remedies undertaken by the trustees have failed, and the only viable solution to the problem is replacement of the doors, at an estimated cost of $92,500.

See Belson v. Thayer & Assocs., Inc., 32 Mass. App. Ct. 256, 260 (1992) (parties may contract for apportionment of upkeep costs for limited common areas under G. L. c. 183A).

This is consistent with § 17.B. of the bylaws, which states plainly that replacement of glass in balcony doors is "the responsibility of the Unit Owner as set forth above in Section 17.A."

Moreover, both of Fudge's alternative readings of § 17.A. suffer from the infirmity that they would require the trustees to undertake repairs to "electrical, plumbing, and heating fixtures within the Unit or belonging to the Unit Owner." See Brillante v. R.W. Granger & Sons, Inc., 55 Mass. App. Ct. 542, 548, n.13 (2002) (declining to construe contract expansively where it would lead to absurd results). See also Cadle Co. v. Vargas, 55 Mass. App. Ct. 361, 366 (2002), quoting Fishman v. LaSalle Nat'l Bank, 247 F.3d 300, 302 (1st Cir. 2001) ("Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons").

We note that the trustees are not estopped from arguing a clear meaning of § 17.A. because their deposition witness acknowledged that the language is confusing. See, e.g., Commonwealth v. Silva, 455 Mass. 503, 511 (2009) (legal opinions are not admissible evidence). To the extent we have not addressed any other of Fudge's contentions, they "have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1952).